**Affirmed and Opinion filed October 1, 2013.**



In The

# Fourteenth Court of Appeals

## NO. 14-12-01169-CV

### IRENE TILLMAN, Appellant,
### V.
### MEMORIAL HERMANN HOSPITAL SYSTEM D/B/A MEMORIAL HERMANN SOUTHWEST HOSPITAL, Appellee.

**On Appeal from the 127th District Court**
**Harris County**
**Trial Court Cause No. 2010-41102**

## O P I N I O N

Appellant Irene Tillman sued her employer, appellee Memorial Hermann Hospital System d/b/a Memorial Hermann Southwest Hospital, for injuries she allegedly received while attempting to x-ray a patient. The trial court dismissed the case on the hospital's motion because Tillman did not serve the hospital with an expert report as required under the Texas Medical Liability Act (TMLA). *See generally* Tex. Civ. Prac. & Rem. Code §§ 74.001–.507. On appeal, Tillman contends that she pleaded and presented evidence of a "garden-variety injury

arising from co-employee negligence in helping her to lift a patient," and therefore the TMLA does not govern her claims. Tillman also contends that application of the TMLA to the negligence claims of non-patients, including non-patient health care workers, violates the equal-protection guarantees of the United States and Texas constitutions. We affirm.

I

Tillman, a radiology technician, claims that on February 8, 2009, she sustained work-related back injuries at the hospital. According to Tillman's deposition testimony, she was in the intensive-care unit performing a portable chest x-ray on an intubated patient weighing over 300 pounds. A male nurse was assisting Tillman. Standing on either side of the patient, Tillman and the nurse lifted the patient at the armpits so that she could place an x-ray cassette underneath the patient. After completing the x-ray, Tillman and the nurse were lifting the patient in the same manner so that Tillman could retrieve the cassette, when, according to Tillman, the nurse released the patient too soon, shifting the patient's weight onto Tillman and injuring her back. At the time of the alleged incident, the hospital did not subscribe to workers'-compensation insurance coverage.

In 2010, Tillman sued the hospital, alleging that she sustained serious injuries in the course of her employment due to the hospital's negligence in failing to provide a safe workplace. In particular, Tillman alleged that the hospital breached its duties "to ensure careful and competent fellow employees so that [she] would have sufficient assistance in a reasonably safe condition, and/or to warn [her] of any dangerous conditions of the failure of [the hospital] to select careful and competent fellow employees." Tillman further alleged that the hospital was

2

vicariously liable for the negligence of her fellow employees while acting within the course and scope of their employment.[1]

In 2012, while this case was pending, the Supreme Court of Texas issued its opinion in *Texas West Oaks Hospital, LP v. Williams*, 371 S.W.3d 171 (Tex. 2012). In that case, Williams, a psychiatric technician at Texas West Oaks Hospital, a private mental-health hospital, sued his employer for on-the-job injuries he sustained while supervising a psychiatric patient. *Id.* at 174–75. The *Williams* court held that Williams was a "claimant" under the TMLA; his claims that West Oaks failed to provide adequate training, warning, monitoring, supervision, and a safe workplace were "health care liability claims" governed by the TMLA; and his failure to serve West Oaks with an expert report within the TMLA's 120-day deadline mandated dismissal of his suit. *See id.* at 174, 192–93.

Relying on *Williams*, the hospital moved to dismiss Tillman's suit, arguing that Tillman's claims were health care liability claims governed by the TMLA. Further, because Tillman failed to serve the statutorily required expert report within the 120-day deadline, the hospital was entitled to dismissal of her claims with prejudice and an award of attorney's fees and costs. *See* Tex. Civ. Prac. & Rem. Code § 74.351(a)–(c). On December 14, 2012, the trial court granted the hospital's motion to dismiss. This appeal followed.

---

[1] In an amended petition, Tillman added a claim that the Hospital violated the federal Pregnancy Discrimination Act by failing to accommodate her condition in accordance with the Hospital's policies and procedures. Thereafter, the Hospital removed the case to federal court. The federal district court granted summary judgment to the Hospital on the pregnancy-discrimination claim, but declined to extend its supplemental jurisdiction over Tillman's state-law claims, which it remanded to state court.

## II

In her first issue, Tillman argues that her claims are not health care liability claims governed by the TMLA and *Williams* is distinguishable. Tillman maintains that, unlike Williams's allegations of inadequate warnings, supervision, and protocol for handling patients, "the focus of [her] suit is on the negligence of the nurse who let go too soon" and shifted the patient's entire weight onto her, injuring her back. According to Tillman, her negligence claims do not involve a medical standard of care owed to patients, and no expert testimony is required to support them. Tillman also suggests that her case can be tried on respondeat-superior liability alone and so does not require evidence of direct negligence on the hospital's part. In response, the hospital urges that Tillman's claims fall squarely within the "safety" category of health care liability claims subject to the TMLA's expert-report requirement.

Whether the legislature intended claims such as those brought by Tillman to fall under the TMLA is a matter of statutory construction, and we review this issue de novo. *Williams*, 371 S.W.3d at 177. We must focus on the nature of the acts or omissions causing the alleged injuries and whether the events are within the ambit of the legislated scope of the TMLA. *Id.* at 176. We are mindful that "[t]he broad language of the TMLA evidences legislative intent for the statute to have expansive application." *Loaisiga v. Cerda*, 379 S.W.3d 248, 256 (Tex. 2012). In a case like this, "our focus in determining whether claims come under the TMLA is not the status of the claimant, but the gravamen of the claim or claims against the health care provider." *Williams*, 371 S.W.3d at 178 (citing *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 854 (Tex. 2005)).

Under the TMLA, a "claimant" is "a person . . . seeking or who has sought recovery of damages in a health care liability claim." Tex. Civ. Prac. & Rem. Code

§ 74.001(a)(2). "Claimant" is broadly defined to include not only patients, but also non-patients who bring health care liability claims, including employees like Tillman. *See Williams*, 371 S.W.3d at 178–79. The TMLA defines a "health care liability claim" (HCLC) as:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or *safety* or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

Tex. Civ. Prac. & Rem. Code § 74.001(a)(13) (emphasis added). Thus, an HCLC under the TMLA contains three basic elements: (1) a physician or health care provider must be a defendant; (2) the claim or claims at issue must concern treatment, lack of treatment, or a departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's act or omission complained of must proximately cause the injury to the claimant. *Williams*, 271 S.W.3d at 179–80. For purposes of Tillman's first issue, the only dispute is whether the second element is satisfied; that is, whether Tillman's claims concern "a departure from accepted standards of . . . safety" and thus are HCLCs governed by the TMLA.

In *Williams*, the Supreme Court of Texas explained that because "safety" is not defined in the TMLA, the Court has construed the term "according to its commonly understood meaning as the condition of being 'untouched by danger; not exposed to danger; secure from danger, harm or loss.'" *Id.* at 184 (quoting *Diversicare*, 185 S.W.3d at 855). The Court also clarified that a claim for the breach of the standard of safety need not be "directly related" to health care to constitute an HCLC. *Id.* at 186. Applying this reasoning to the claims of Williams against West Oaks, both of whom were health care providers, the Court concluded

5

that Williams's claims that his injuries arose from West Oaks' failure to properly train, warn, provide adequate protocols and equipment, and provide a safe workplace "implicate the safety, as commonly understood, of employees and patients." *Id.* at 183–84. Accordingly, the Court held that Williams had alleged "departures from accepted standards of safety" constituting HCLCs under the TMLA. *Id.* at 186.

In her pleadings, Tillman alleges that the hospital had a duty to provide a safe workplace, to "ensure careful and competent fellow employees" so that she would have "sufficient assistance in a reasonably safe condition," and to warn her of any dangerous conditions created by its failure to select competent fellow employees. Her incompetent fellow employees caused her injuries, Tillman alleges, and the hospital "knew [or] should have known[] that the incompetent fellow employees constituted a hazard . . . and consequently made the premises involved a place which was not reasonably safe." Additionally, Tillman alleges that the nurse who assisted her during the x-ray procedure was negligent in failing to adequately lift the patient, and that the hospital is vicariously liable for its nurse's negligence. The gravamen of these claims is that Tillman's injuries arose from the hospital's failure to adequately hire, train, supervise, and warn employees so as to minimize the risks of injury to those employees providing health care services to patients.[2] These claims implicate the "safety" component of an HCLC, as defined and applied by the supreme court, because Tillman complains of the hospital's alleged departures from accepted standards of safety that a hospital owes its employees. *See Williams*, 371 S.W.3d at 184–86; *see also CHCA Bayshore,*

---

[2] We note that Tillman asserts in her appellate brief that the employer's duty to provide a safe workplace includes "properly hiring, training, and supervising employees," as well as "warning of hazards and providing safety equipment and assistance," and "furnishing safe machinery and other implements of work." Such allegations mirror those in *Williams*. *See* 371 S.W.3d at 175.

6

*L.P. v. Salazar*, No. 14-12-00928-CV, 2013 WL 1907888, at *4–5 (Tex. App.—Houston [14th Dist.] May 7, 2013, pet. filed) (mem. op.) (holding employee's claims against hospital for failure to provide proper training, equipment, assistance, supervision, and a safe workplace implicated departures from accepted standards of safety and thus were HCLCs).

Tillman argues, however, that her allegations regarding the hospital's duty to provide a safe workplace are not the "heart" of her case. Instead, she asserts that her case revolves around the negligence of her coworker in failing to adequately lift the patient. But application of the TMLA cannot be avoided by artfully pleading around it or splitting claims into both health care liability claims and other types of claims such as ordinary negligence claims. *Yamada v. Friend*, 335 S.W.3d 192, 194 (Tex. 2010). Nor does an allegation of vicarious liability dispense with the requirement of an expert report when the claim constitutes an HCLC. *See Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 671–72 (Tex. 2008) ("When a party's alleged health care liability is purely vicarious, a report that adequately implicates the actions of that party's agents or employees is sufficient.").

Tillman also argues that her claim is not an HCLC because "expert testimony is unnecessary to assess whether the nurse is guilty of negligence for releasing his grip too soon." We cannot agree that the proper techniques health care providers are to use for lifting a heavy, intubated patient confined to a bed in a hospital intensive-care unit are necessarily within the knowledge of lay persons. Indeed, Tillman testified to her understanding that nurses—like the one who assisted her—receive training on the proper way to lift a patient when performing a portable chest x-ray. Tillman also testified that it was the hospital's "obligation . . . to know whether or not [the nurse] has training." In any event, the Texas Supreme Court has instructed that whether a claim requires expert testimony is not

7

dispositive, because "even when expert medical testimony is not necessary, the claim may still be an HCLC." *Williams*, 371 S.W.3d at 182 (citing *Murphy v. Russell*, 167 S.W.3d 835, 838 (Tex. 2005)).

In her reply brief, Tillman also argues that she was "compelled" to plead that the hospital was directly negligent, particularly in failing to provide a safe workplace, because "those are the elements of a nonsubscriber claim under the caselaw." Consequently, Tillman contends, she "should not be penalized for pleading her cause of action in the required words of nonsubscriber law." But our focus is on the facts underlying the claim, not the form of, or artfully phrased language in, Tillman's pleadings describing the facts or legal theories asserted. *See Loaisiga*, 379 S.W.3d at 255.

Here, Tillman is complaining about the conduct of one health care provider assisting another health care provider performing a medical procedure on a hospital patient, as well as the hospital's breach of its duties to ensure the safety of its employees acting within the course and scope of their employment through proper hiring, training, supervision, and warning. Applying the broad language of the TMLA as interpreted by our supreme court, Tillman's claims against the hospital, including her claim that the hospital is vicariously liable for the actions of its nurse, implicate departures from accepted standards of safety under the TMLA and are subject to the TMLA's requirements. Tillman was required to serve an expert report within 120 days of filing suit, and she did not. The trial court did not err in dismissing her complaint. We therefore overrule Tillman's first issue.

III

In her second issue, Tillman argues that the TMLA as applied to non-patient health care workers violates the equal-protection guarantees of the United States and Texas constitutions. *See* U.S. Const. amend. XIV, § 1; Tex. Const. art. I, § 3.

She contends that the TMLA subjects all health care workers' claims against their nonsubscriber employers to its "onerous" requirements "simply because they work in the health[]care industry." Tillman argues that, as applied to injured health care workers, the TMLA is not rationally related to the legitimate governmental interest of curbing medical-malpractice claims and stabilizing the malpractice-insurance market. Tillman also contends her arguments extend to all non-patients, not just non-patient health care workers.

We review constitutional questions de novo. *Alobaidi v. Univ. of Tex. Health Sci. Ctr. at Houston*, 243 S.W.3d 741, 744 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (citing *State v. Hodges*, 92 S.W.3d 489, 494 (Tex. 2002)). Because equal-protection analysis under the Texas Constitution mirrors that under the U.S. Constitution, we address them simultaneously. *Bell v. Low Income Women of Tex.*, 95 S.W.3d 253, 266 (Tex. 2002). Courts apply a presumption of constitutionality to statutes; therefore, the party alleging that a statute is unconstitutional has the burden of proof. *Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 725 (Tex. 1995).

When a statute does not impinge on a protected right or distinguish between persons on a suspect basis, as is the case here, an equal-protection challenge requires a showing that the government treats the claimant differently from other similarly situated persons and that it has no rational basis to do so. *See Heller v. Doe*, 509 U.S. 312, 319–20 (1993); *Rose v. Doctors Hosp.*, 801 S.W.2d 841, 846 (Tex. 1990). The challenging party has the burden to negate "any reasonably conceivable state of facts that could provide a rational basis for the classification." *Alobaidi*, 243 S.W.3d at 747 (quoting *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001)). The legislature's motivation for enacting a statute is not required to be apparent from the legislative record. *Id.* Indeed, any reasonable

9

purpose for a statute, even one not actually contemplated by the legislature, will defeat a rational-basis challenge. *Id.* (citing *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993)).

Tillman's argument rests on her characterization of the legislature's purpose for enacting the TMLA as limited to addressing "the medical[-]malpractice insurance crisis" that first arose in the 1970s and reappeared in the 1990s. *See Williams*, 371 S.W.3d at 177. Tillman argues that applying the TMLA to non-patient health care workers (as well as all non-patients) is irrational because non-patients "no more contribute to medical[-]malpractice rates than do injured persons in other settings."

But the TMLA's purpose is not confined solely to controlling medical-malpractice insurance rates. Notably, among the legislature's stated purposes in enacting the TMLA were reducing the excessive frequency and severity of HCLCs and decreasing the cost of those claims, while doing so in a manner that would not unduly restrict a claimant's rights. *See CHCA Woman's Hosp., L.P. v. Lidji*, 403 S.W.3d 228, 232 (Tex. 2013). The Texas Supreme Court has explained that the "fundamental goal" of the TMLA is "to make health care in Texas more available and less expensive by reducing the cost of [HCLCs]." *Scoresby v. Santillan*, 346 S.W.3d 546, 552 (Tex. 2011). To that end, a claimant is required to produce an expert report early in the litigation to demonstrate that the claim has merit. *See id.*; *see also In re Woman's Hosp. of Tex., Inc.*, 141 S.W.3d 144, 147 (Tex. 2004) (Owen, J., concurring in part and dissenting in part) (stating that the legislature intended the expert-report requirement to "reduce waste of the parties', the courts', and the insurers' time and money, which would favorably impact the cost of insurance to health care providers and thus the cost and availability of health care to patients").

It is reasonably conceivable that the legislature extended the requirements of the TMLA to lawsuits brought by non-patients alleging HCLCs against health care providers to further the legitimate state interests in curtailing frivolous lawsuits and reducing health care costs in Texas. *See Scoresby*, 346 S.W.3d at 552; *see also Hebert v. Hopkins*, 395 S.W.3d 884, 897–900 (Tex. App.—Austin 2013, no pet.) (rejecting claim that TMLA irrationally singles out claimants for disparate treatment in violation of their rights to due process and equal protection). Tillman fails to demonstrate otherwise. We therefore overrule Tillman's second issue.

* * *

Accordingly, we overrule Tillman's issues and affirm the trial court's judgment.

/s/    Jeffrey V. Brown
       Justice

Panel consists of Justices Brown, Christopher, and Donovan.