

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00067-CV

SHARON MORRISON, Appellant

V.

WHISPERING PINES LODGE I, L.L.P. D/B/A WHISPERING PINES LODGE AND
WHISPERING PINES LODGE, L.L.C. D/B/A WHISPERING PINES LODGE, Appellees

On Appeal from the County Court at Law #2
Gregg County, Texas
Trial Court No. 2011-1549-CCL2

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss
Dissenting Opinion by Justice Carter

# O P I N I O N

Sharon Morrison was employed by Whispering Pines Lodge (a nursing home) in 2009 when, as she was retrieving towels for a resident from a resident shower area, she slipped and fell in an area that had just been mopped by another nursing home employee, injuring her left forearm. Morrison sued Whispering Pines in 2011for her injury, in what she believed to be a simple premises liability matter. In February 2013, Whispering Pines filed a motion to dismiss pursuant to Chapter 74 of the Texas Civil Practice and Remedies Code, asserting that, because Morrison's claim was a health care liability claim (HCLC) and Morrison did not file an expert report as required by the Texas Medical Liability Act (TMLA or Act), such claim should be dismissed. The trial court granted the motion, dismissed the suit, and awarded Whispering Pines' net attorneys' fees of $76.50.[1] Because the claims here are at least indirectly related to health care, we affirm the judgment of the trial court.

A "health care liability claim" is

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a) (13) (West Supp. 2013). If a claim falls within this definition, "a claimant shall, not later than the 120th day after the original petition was filed,

---

[1]Because Morrison incurred discovery expenses between the deadline for filing dispositive motions and the date Whispering Pines filed its motion to dismiss, the trial court offset Morrison's attorneys' fees with those discovery expenses.

2

serve on each party or the party's attorney one or more expert reports. . . ."  TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West Supp. 2013).

We typically review a trial court's order granting a motion to dismiss for failure to timely file an expert report under Section 74.351(a) for an abuse of discretion.  *See id.*; *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877–78 (Tex. 2001); *Good Shepherd Med. Ctr.-Linden, Inc. v. Twilley*, No. 06-12-00098-CV, 2013 WL 772136, at *1 (Tex. App.— Texarkana Mar. 1, 2013, pet. denied).  A determination, as here, of whether a claim falls within the purview of the Act is a question of law and is thus reviewed de novo.  *Tex. W. Oaks Hosp., LP & Tex. Hosp. Holdings, LLC v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012).

Morrison's original petition alleges that, "[w]hile performing duties within the course and scope of her employment, [she] slipped and fell on the premises of Whispering Pines Lodge in an area that had been mopped by another employee of [Whispering Pines] thereby creating a dangerous condition for [herself] and others."  Moreover, "Whispering Pines Lodge failed to warn [] Morrison of the dangerous condition or to make the dangerous condition reasonably safe."  The issue here centers on whether Morrison's claim concerns "a departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care."  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a) (13).

The Texas Supreme Court's analysis in *Williams* has, to a large extent, refocused the debate on what type of claims fall within the purview of the Act.  *See Williams*, 371 S.W.3d 171. *Williams* is therefore central to our analysis.  In that case, the high court faced the question of whether "the claims of an employee against his employer, both of whom [were] health care

3

providers, alleging injuries arising out of inadequate training, supervision, risk-mitigation, and safety in a mental health facility, constitute" HCLCs. *Id.* at 174.[2] In concluding that such claims were HCLCs, the court explained that, in distinguishing ordinary negligence claims from HCLCs, the court must look to "the nature of the acts or omissions causing claimants' injuries and whether the events are within the ambit of the legislated scope of the TMLA." *Id.* at 176. We are not to consider whether the claimed injury "arose from treatment commonly understood to be some type of medical or health care . . . ." *Id.* at 179. Likewise, no consideration is given to whether "the incident causing the injury would have been a common law negligence claim." *Id.* Rather, the issue is whether the claim falls beneath "the umbrella fashioned by the Legislature's promulgation of the TMLA." *Id.* *Williams* held, *inter alia*, that "the safety component of HCLCs need not be directly related to the provision of health care . . . ." *Id.* at 181,[3] 186.

Morrison cites caselaw to argue that this case is an ordinary negligence case. *See Twilley*, 2013 WL 772136; *Doctors Hosp. at Renaissance, Ltd. v. Mejia*, No. 13-12-00602-CV, 2013 WL 4859592 (Tex. App.—Corpus Christi Aug. 1, 2013, pet. filed) (mem. op.). *Twilley*

---

[2]In accordance with *Williams*, the absence of a health care relationship between the claimant and the health care provider is not a barrier to the inclusion of a claim within the Legislature's definition of health care liability claims. *Williams*, 371 S.W.3d at 179.

[3]"Health care" is "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(10) (West Supp. 2013). Because Section 74.001(a)(13) (defining health care liability claim) incorporates the definition of "health care," such a claim must involve a physician-patient relationship. *Williams*, 371 S.W.3d at 181. A claim involving employee supervision of a patient can qualify under the health care prong of Section 74.001(a)(13) because the patient's presence at the facility is due to their patient-physician relationship. *Id.*

4

involved a negligence claim against a hospital, premised on alleged Occupational Safety and Health Act violations, for injuries allegedly sustained in a fall from a ladder attached to the building and a fall over a mound of hardened cement on the hospital's premises. This Court upheld the trial court's denial of the hospital's Chapter 74 motion to dismiss. In reaching this conclusion, we determined that *Williams* did not include as HCLCs any "safety claims that are completely untethered from health care. . . . [T]he safety claims in *Williams* were at least indirectly related to health care." *Twilley*, 2013 WL 772136, at *4. "The simple fact that an injury occurred on a health care provider's premises is not enough." *Id.* at *5. We reasoned that a safety claim under the TMLA must "have at least an indirect relationship to health care." *Id.* Otherwise, "the high court's directive that ordinary negligence claims are distinguished from health care liability claims by focusing on the nature of the acts or omissions causing the alleged injuries" would be rendered meaningless. *Id.* Because Twilley's safety claim was entirely unrelated to health care, it did not fall within the purview of the TMLA. *Id.* at *6.[4] The Texas Supreme Court had the opportunity to review *Twilley*, but denied the petition for review.

*Mejia* involved a claim against a hospital by a visitor who slipped and fell on a freshly waxed walkway in the hospital, after having been assured that it was safe. *Mejia*, 2013 WL 4859592, at *1. Mejia sued the hospital, alleging, among other things, that the condition of the premises was "unreasonably dangerous" and "unsafe." *Id.* The appellate court ruled that Chapter 74 did not apply. *Id.* The primary issue in *Mejia* was whether the alleged slip and fall

---

[4]In reaching this conclusion, we relied, in part, on *Loaisiga v. Cerda*, 379 S.W.3d 248, 256 (Tex. 2012), decided after *Williams*. In that case, the court indicated that the Legislature could not have intended for the expert-report requirement to apply to claims that were wholly separable from the rendition of medical care, health care, safety, or professional or administrative services directly related to health care, even though the conduct occurred in a health care context. *Id.* at 257.

5

claim was properly classified as a health care liability claim under the "safety" prong of Section 74.001(a) (13). *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a) (13). The Corpus Christi court recognized that *Williams* stopped short of concluding that all premises liability claims involving a health care provider are health care liability claims. Accordingly, the *Mejia* court applied *Williams* "narrowly to govern cases that involve safety claims that are indirectly related to health care." *Mejia*, 2013 WL 4859592, at *2. However, because Mejia's claim did not fall within the category of claims indirectly related to health care, it was not a health care liability claim. Instead, the court found that Mejia's claim was simply a "garden variety" slip-and-fall case, holding that "'safety' claims like those pled by Mejia, which are completely unrelated to health care, are excluded from the scope of the TMLA." *Id*. at *3–4.

Whispering Pines contends this case is different from *Twilley* and *Mejia*, primarily because the safety claims in those cases were not even indirectly related to health care and, thus, were not health care liability claims under the TMLA. Here, however, Whispering Pines contends its alleged negligence was directly related to health care services that Whispering Pines is required by law to provide to its residents. It thus contends that, at the very least, the acts were indirectly related to health care, thereby causing Morrison's claims to fall within the scope of the TMLA, even in light of the holdings in *Twilley* and *Mejia*.

Morrison alleges she suffered injuries as a result of Whispering Pines' failure to keep the premises safe from harm. Unlike other categories of claims falling under the scope of the TMLA, the term "safety" is not defined in the statute. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.001 (West Supp. 2013). The Texas Supreme Court has defined "safety" broadly, according

6

to its commonly understood meaning, as the condition of being "untouched by danger; not exposed to danger; secure from danger, harm or loss." *Williams*, 371 S.W.3d at 183 (citing *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 855 (Tex. 2005)). If this claim is a HCLC at all, it falls under the safety component, indicating an alleged departure from the accepted standards of safety. *See Williams*, 371 S.W.3d at 186. *Williams* instructs that "the safety component of the HCLCs need not be directly related to the provision of health care." *Id.*[5] In *Twilley*, this Court held that safety claims which are completely unrelated to health care do not fall within the scope of the TMLA. *Twilley*, 2013 WL 772136, at *5.

Since *Twilley*, many cases have touched on the subject at hand. Just within the last couple of weeks, three cases have been decided concerning the question of when a safety claim is a HCLC. On January 23, 2014, our sister court in Fort Worth ruled that a claim by a hospital visitor who fell in the hospital lobby was not a HCLC because there was not even an indirect connection between the visitor's fall in the lobby and the provision of health care. *See Weatherford Tex. Hosp. Co. v. Smart*, No. 02-13-00063-CV, 2014 WL 252088, at **1–6 (Tex. App.—Fort Worth Jan. 23, 2014, no pet. h.). Five days later, another sister court, the Fourteenth District Court of Appeals in Houston, ruled apparently to the contrary, finding a visitor's slipping on water on the floor of a hospital hallway was a HCLC. *See Mem'l Hermann Hosp. Sys. v. Galvan*, No. 14-13-00120-CV, 2014 WL 295166 (Tex. App.—Houston [14th Dist.] Jan. 28, 2014, no pet. h.). Most recently, our sister court in San Antonio held that the claim of a hospital

---

[5]The Texas Supreme Court recently reiterated its opinion in *Williams*, holding that an employee's claims against its health care provider employer alleged a departure from accepted safety standards in a psychiatric hospital when the employee was injured while attempting to restrain a psychiatric patient. *Psychiatric Solutions, Inc. v. Palit*, 414 S.W.3d 724, 725 (Tex. 2013).

7

visitor on crutches who fell when the automatic entrance door to the hospital closed on him was not a HCLC. *See Methodist Healthcare Sys. of San Antonio*, *Ltd.*, *LLP v. Dewey*, No. 04-13-00277-CV, 2014 WL 462300 (Tex. App.—San Antonio Feb. 5, 2014, no pet. h.). The *Smart* and *Dewey* rulings seem to arise from what are purely premises-liability claims, unrelated to the provision of health care except the owner/operator and overall purpose of the facility. *Galvan* seems inconsistent with the other two recent cases, unless the particular location of the accident, being in a hospital hallway, could serve to distinguish it from the other two. Notwithstanding the uncertainties in the development in how the courts interpret safety claims, we conclude that, if there is at least an indirect connection between Morrison's claim and the provision of health care, we are bound to rule that the claim is a HCLC. The issue we must decide, then, is whether Morrison's safety claims are related, even indirectly, to health care.

Whispering Pines relies on *Omaha Healthcare Center, LLC v. Johnson*, 344 S.W.3d 392 (Tex. 2011), for the proposition that Morrison's safety claim is related to health care. In that case, Johnson sued Omaha Healthcare Center (Omaha) (a nursing home) on behalf of the estate of her deceased sister, who was a resident of the nursing home when she was bitten by a brown recluse spider and died. Johnson alleged that Omaha "failed to maintain the premises in a safe condition by failing to inspect the premises, failing to properly clean the premises, failing to institute proper pest control policies, and failing to prevent insect and spider infestations." *Id.* at 395. The high court concluded that Johnson's claim was a safety claim directly related to health

care and was therefore a health care liability claim.[6] In arriving at this conclusion, the court recognized that nursing homes "are required to take actions to provide 'quality care' which includes things such as safety of the environment." *Id.* (citing TEX. HEALTH & SAFETY CODE ANN. § 242.001(a) (1), (8) (West 2010)).[7] Moreover, services provided to nursing home

---

[6]A significant distinction between this case and *Johnson* is the fact that, in *Johnson*, a nursing home resident was injured from an unsafe premises condition, while, here, a nursing home employee was injured as a result of such a claim. *Williams*, however, teaches that the change from "patient" to "claimant" in the 2003 amendment to the HCLC definition in the TMLA now includes an employee of a health care provider who brings an HCLC. *Williams*, 371 S.W.3d at 179.

[7]The text of this statute, relating to the scope, purpose, and implementation of rules pertaining to convalescent and nursing homes and related institutions, provides:

> (a)      It is the goal of this chapter to ensure that institutions in this state deliver the highest possible quality of care. This chapter, and the rules and standards adopted under this chapter, establish minimum acceptable levels of care. A violation of a minimum acceptable level of care established under this chapter or a rule or standard adopted under this chapter is forbidden by law. Each institution licensed under this chapter shall, at a minimum, provide quality care in accordance with this chapter and the rules and standards. Components of quality of care addressed by these rules and standards include:
>
> > (1)      quality of life;
> >
> > (2)      access to care;
> >
> > (3)      continuity of care;
> >
> > (4)      comprehensiveness of care;
> >
> > (5)      coordination of services;
> >
> > (6)      humaneness of treatment;
> >
> > (7)      conservatism in intervention;
> >
> > (8)      safety of the environment;
> >
> > (9)      professionalism of caregivers; and
> >
> > (10)      participation in useful studies.

TEX. HEALTH & SAFETY CODE ANN. § 242.001(a)(1)–(10) (West 2010).

residents include meeting the residents' fundamental needs. Meeting residents' fundamental needs necessarily includes the protection of their health and safety. *Id*. at 394–95 (citing 40 TEX. ADMIN. CODE ANN. § 19.1701 (West, Westlaw current through Jan. 24, 2014); 40 TEX. ADMIN. CODE ANN. § 19.401(b) (West, Westlaw current through Jan. 24, 2014)).[8] Because "health care" includes "*any act* performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's . . . confinement," Johnson's allegations that Omaha did not protect the resident from danger or harm while caring for her was a health care liability claim. *Johnson*, 344 S.W.3d at 395 (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a) (10)) (emphasis added).

Whispering Pines contends that, because the housekeeping services at issue here were required by law in order to maintain a clean, safe, and sanitary environment *for* nursing home residents, the cleaning of a resident shower area in this case falls within the broad definition of "health care." That is, the cleaning was done by a health care provider (Whispering Pines) "for, to, or on behalf of a patient during the patient's . . . confinement." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a) (10). As in *Johnson*, Whispering Pines was required by Texas law to provide a safe and clean environment for its residents. *See* TEX. HEALTH & SAFETY CODE ANN. § 242.001(a) (1), (8); 40 TEX. ADMIN. CODE ANN. §§ 19.1701, 19.401(b). Certainly, keeping resident shower areas clean and sanitized for the benefit of nursing home residents is part and

---

[8]Section 19.1701 sets forth standards for the physical environment of a nursing home facility for licensure and Medicaid certification. Subsection 8 provides, "The facility must provide a safe, functional, sanitary, and comfortable environment for residents, staff and the public." 40 TEX. ADMIN. CODE ANN. § 19.1701(8). Section 19.401(b) provides that nursing home residents have a right to safe, decent, and clean conditions. 40 TEX. ADMIN. CODE ANN. § 19.401(b) (statement of resident rights).

parcel of maintaining a safe, sanitary, and comfortable environment. *See* 40 TEX. ADMIN. CODE ANN. § 19.1701(8) (nursing home must provide safe, functional, sanitary, and comfortable environment for residents). Whispering Pines therefore contends that Morrison's safety claim is at least indirectly related to health care.

We are to look to the substance of the claim to determine whether the claim falls beneath "the umbrella fashioned by the Legislature's promulgation of the TMLA." *Williams*, 371 S.W.3d at 179. The injury here allegedly occurred as a result of Whispering Pine's actions in attempting to carry out its legal duty to provide a sanitary environment for its residents. *Johnson* recognizes a nursing home's broad duty to provide health care for its residents, including things such as safety and cleanliness of the environment. *Johnson*, 344 S.W.3d at 395; *see also Rubio*, 185 S.W.3d at 849–50 (fundamental needs of residents include sanitary living conditions). Here, one Whispering Pines employee was working to keep a shower area safe and clean for the benefit of its residents, as required by Texas law, while another employee, Morrison, retrieved a towel needed by another resident.

Unlike in *Twilley*, we cannot say Morrison's safety claim is totally untethered from health care (*see Twilley*, 2013 WL 772136, at *5),[9] since the State of Texas requires Whispering Pines

---

[9]We further distinguish this case from those in which our sister courts have found a slip and fall by a hospital visitor is not a HCLC. In *Christus St. Elizabeth Hospital v. Gulliory*, 415 S.W.3d 900 (Tex. App.—Beaumont 2013, no pet. h.), the Beaumont court held that a negligence claim against the hospital stemming from injuries sustained when Gulliory, a hospital visitor, slipped and fell in liquid on the floor in the common area of the hospital was not a HCLC under the TMLA. *Id.* at 901. The court noted that "no nexus exists between the claims Guillory asserts in her . . . Petition and the hospital's duties of providing healthcare." *Id.* at 902. Further, the hospital "failed to direct the trial court or to direct us to any health care standards governing a hospital's maintenance or lighting of its halls or buildings." *Id.* at 903. Unlike *Gulliory*, this case involves a nexus between Morrison's safety claims and the provision of health care as well as legislative standards governing the facility's legal duty to provide a safe and sanitary environment for its residents. *See also Mejia*, 2013 WL 4859592, at *3 (claims did not involve departures from accepted standards of safety directly or indirectly related to health care); *cf. Ross v. St. Luke's Episcopal Hosp.*,

11

to provide housekeeping services and a safe, clean, and sanitary environment to its residents.  *See* 40 TEX. ADMIN. CODE § 19.705; *Johnson*, 344 S.W.3d at 395.  Because Morrison's safety claim is at least indirectly connected to what can be classified as actions involving health care, we hold that her claim is a HCLC.[10]

Morrison contends that her claims should not fall within the purview of the TMLA because medical expertise is not required to explain how she slipped and fell on the wet shower room floor.  A fallacy of that contention is that medical expertise was also not needed to explain how a spider could come to bite a nursing home resident, yet that claim was determined by the Texas Supreme Court to be a HCLC.  *See Johnson*, 344 S.W.3d 392.  Plus, the expert report requirement of Section 74.351 is only a threshold requirement for the continuation of the lawsuit, not a requirement for recovery.  *See Murphy v. Russell*, 167 S.W.3d 835, 838 (Tex. 2005) (per curiam) ("The fact that in the final analysis, expert testimony may not be necessary to support a verdict does not mean the claim is not a health care liability claim."); *see also Williams*, 371 S.W.3d at 182 (claim may still be health care liability claim when expert testimony not required).

---

No. 14-12-00885-CV, 2013 WL 1136613 (Tex. App.—Houston [14th Dist.] Mar. 19, 2013, pet. filed) (hospital visitor's negligence claim following slip and fall on hospital premises was a HCLC to which expert report requirement applies); *Tillman v. Mem'l Hermann Hosp. Sys.*, No. 14-12-01169-CV, 2013 WL 5470064, at *3 (Tex. App.—Houston [14th Dist.] Oct. 1, 2013, pet. filed) (negligence action by hospital employee who injured her back while x-raying patient was HCLC, as claims arose from hospital's alleged failure to adequately hire, train, supervise, and warn employees so as to minimize risks of injury to those employees providing health care services to patients); *CHCA Bayshore, L.P. v. Salazar*, No 14-12-00928-CV, 2013 WL 1907888, at *1 (Tex. App.—Houston [14th Dist.] May 7, 2013, pet. filed) (hospital employee's negligence action against hospital for injuries received when attempting to maneuver a patient was a HCLC because "whether the hospital failed to provide proper training, equipment, and supervision for hospital personnel responsible for moving patients so as to avoid or limit injury to the personnel clearly implicates safety as that term was interpreted by the *Williams* court.").

[10]Whispering Pines further contends that Morrison's claim is one for health care liability because it alleges departures from accepted standards of health care applicable to nursing home facilities.  Because we conclude that Morrison's safety claim is at least indirectly related to health care, we need not address this issue.

12

Morrison further contends that, in this context, it will be impossible to find a qualified expert. As this Court recognized in *Twilley*, an expert opinion regarding whether a health care provider departed from accepted standards of health care or safety must come from an expert qualified to testify under the requirements of Section 74.402. *Twilley*, 2013 WL 772136, at *6 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r) (5) (B) (West 2011)). We recognized that "it would be terribly difficult, if not impossible, to find a qualified expert under the statute who was also competent to opine on the relevant accepted standards of care—OSHA ladder construction and installation and walking surface standards." *Id.*

The expert dilemma in *Twilley*, though, arose from the fact that the safety claims in that case were totally unrelated to health care. Because the safety claims in this case are at least indirectly related to health care, the difficulty in locating an appropriate expert should be no different than in any other TMLA case. Here, for example, Whispering Pines was bound to comply with health and safety laws and regulations enacted by the Legislature to ensure that nursing home facilities aim to provide the highest level of care to their residents. Whispering Pines, a health care provider, is the defendant in this case. Compliance with the expert report requirement could be accomplished by retaining a physician with the requisite training, education, and knowledge necessary to provide an opinion concerning the acceptable standard of health care and/or safety required for a nursing home facility. *See* TEX. CIV. PRAC. & REM. CODE § 74.402(b) (1) (West 2011).

13

We affirm the judgment of the trial court.



Josh R. Morriss, III
Chief Justice



DISSENTING OPINION

In March 2013, this Court held that when a worker trips and falls on a mound of concrete on a health-care facility premises, the ensuing negligence claim is not even indirectly related to health care. *Good Shepherd Med. Ctr.-Linden*, *Inc. v. Twilley*, No. 06-12-00098-CV, 2013 WL 772136 (Tex. App.—Texarkana Mar. 1, 2013, pet. denied). Now, the majority holds that when a worker slips and falls on a puddle of water inside the health-care facility, the negligence claim involves health care, and the employee must file a medical expert report. I am not sure what has changed in a few months. The purported distinction is that the nursing home is governed by regulations for "housekeeping services" and presumably regarding safely mopping floors. When looked at from a common sense and practical standpoint, the distinction evaporates and the majority opinion violates our own precedent.

This case, like several others, presents nothing more than a "garden variety" premises liability claim. The simple fact that Morrison fell on a wet floor located in a nursing home does not mean, as the majority postulates, that her injury claim is one for health-care liability. *Doctors Hosp. at Renaissance*, *Ltd. v. Mejia*, No. 13-12-00602-CV, 2013 WL 4859592, at **1–3 (Tex. App.—Corpus Christi Aug. 1, 2013, pet. filed) (affirming trial court's denial of hospital's

14

motion to dismiss where hospital visitor fell on waxed floor of walkway and visitor failed to file expert report). Like the Corpus Christi court, the Beaumont Court of Appeals has also determined that a garden-variety premises liability case is not a health-care liability claim under the Texas Medical Liability Act (TMLA). In *Christus St. Elizabeth Hospital v. Gulliory*, 415 S.W.3d 900 (Tex. App.—Beaumont 2013, no pet. h.), the Beaumont court held that a negligence claim against the hospital stemming from injuries sustained when Gulliory, a hospital visitor, slipped and fell in liquid on the floor in the common area of the hospital was not a HCLC under the TMLA. *Id*. at 901. The court noted that "no nexus exists between the claims Guillory asserts in her . . . Petition and the hospital's duties of providing healthcare." *Id*. at 902.

More recently, the Dallas court held that a safety claim completely unrelated to health care does not fall within the ambit of Chapter 74 in *Baylor University Medical Center v. Lawton*, No. 05-13-00188-CV, 2013 WL 6163859, at **3–4 (Tex. App.—Dallas Nov. 25, 2013, no pet. h.). In that case, Lawton sued Baylor for workplace injuries allegedly sustained when she breathed sewage and chemical fumes from raw sewage that backed up into showers and sinks on the floor where she was working as a nurse. *Id*. at *1. In determining Lawton's claim was not one for health-care liability under Chapter 74, the court found that her alleged injury was "unrelated to the provision of health care to the patient population or to anyone else," *Id*. at *2, reasoning that "'[i]f *every* safety claim against a health care provider were considered a health care liability claim, there would be no need to analyze the nature of the acts or omissions which caused the alleged injuries.'" *Id*. at *3 (quoting *Twilley*, 2013 WL 772136, at *6).

15

I am not the only one who believes the *Twilley* case precedent controls this case. A few days ago, the Fort Worth court adopted the reasoning of *Twilley* and held that falling on a puddle of water in a hospital was not even indirectly related to health care or safety and did not require an expert report. ("We find the Texarkana court's reasoning in *Twilley* to be persuasive, sound, and applicable to the case before us.") *Weatherford Tex. Hosp. Co. v. Smart*, No. 02-13-00063-CV, 2014 WL 252088, at *2 (Tex. Crim. App. Jan. 23, 2014).[11]

The majority opinion states that the injury occurred as a result of the nursing home's actions in attempting to keep the premises safe and clean for its residents; consequently, the opinion reasons Morrison's claim is related to health care. The undisputed evidence is that the fall occurred in a room where Morrison was retrieving towels. Morrison referred to this as the "shower room," but clearly the event did not occur in a shower stall. Morrison testified that when she left the room, she saw the housekeeper "in the shower mopping the inside of the shower." As she was leaving the room, she fell. Is it a material distinction that she stepped into a room and fell as opposed to walking in the hallway and slipping in a puddle of water? Of course the nursing home should maintain both the rooms of its facility and the halls in a clean and safe manner so the residents can enjoy the facility. Likewise, as in *Twilley*, the nursing home should attempt to keep the premises free from mounds of concrete for the benefit of its residents who walk on the property. Is it important that the slip and fall occurred inside the

---

[11]Apparently, the word has been given to file motions to dismiss in every slip and fall case at or near a health-care facility in Texas. The appellate opinions on this subject are being released faster than I can keep up with them. Now, I find the San Antonio court has been persuaded by our *Twilley* opinion together with others that a premise liability claim at a health-care facility is not included in the TMLA. *Methodist Healthcare Sys. of San Antonio v. Dewey*, No. 04-13-00277-CV, 2014 WL 462300 (Tex. App.—San Antonio Feb. 5, 2014, no pet.) (visitor in hospital injured by electronic door). The San Antonio court specifically stated that even though the *Twilley* case involved an employee, not a vistor, "the analysis is comparable under the circustances of those cases."

building rather than outside or occurred in a room instead of a few feet away in a hallway? Is this the basis for allowing one person to have a day in court and denying it to another? The law needs to attempt to make sense.

To conclude that the simple act of mopping the floor equates to the provision of "health care" defies logic and common sense. Mopping a floor to keep it clean is not an act unique to nursing homes or health-care providers. Grocery stores, convenience stores, shopping malls, restaurants, and myriad other businesses ensure that business premises are mopped and cleaned. Many reasons exist for mopping floors including aesthetics and preventing deterioration of flooring material. "In enacting a statute, it is presumed that a just and reasonable result is intended." TEX. GOV'T CODE ANN. § 311.021(3) (West 2013). To interpret the act of mopping the floor as falling within the realm of "health care" in order to arrive at the desired result that an ordinary slip-and-fall claim is a health-care liability claim is neither reasonable nor just.

We are to look to "the nature of the acts or omissions causing claimants' injuries" in determining whether a claim is one for health-care liability. *Williams*, 371 S.W.3d at 176. The acts or omissions alleged here are simply that a janitor left water on the floor after cleaning it. This Court has previously held that "[t]he simple fact that an injury occurred on a health care provider's premises is not enough" to bring a cause of action under the legislated scope of the TMLA. *Twilley*, 2013 WL 772136, at *5. Like tripping on concrete, as in *Twilley*, slipping on a waxed floor, as in *Mejia*, and slipping in a water puddle, as in *Weatherford* and *Guillory*, the present case does not fall within the category of safety claims even indirectly related to health care.

17

I agree with the Corpus Christi, Dallas, Beaumont, Fort Worth, and San Antonio courts as well as our opinion in *Twilley* and would find that this simple slip and fall case is governed by the traditional law of premises liability rather than the TMLA. This Court correctly stated the law in *Twilley*. Other courts have relied on it. We should follow our own precedent.

It is also plain that to require Morrison to obtain an expert report from one qualified to present such a report under the Act would be an exercise in futility. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.402 (West 2011). While the need for an expert report that articulates the standard of care is not a litmus test in determining whether a claim is a HCLC, medical expertise is not required to explain why someone might slip and fall in water left on the floor. *See Murphy v. Russell*, 167 S.W.3d 835, 838 (Tex. 2005). To produce an expert report from one who practices in the proper health-care field would require that some medical doctor testify on the proper method of mopping floors. TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(b)(1).

Here, this worker is told that even though no worker's compensation benefit is available, she has no other remedy.[12] She cannot have her day in court because she did not obtain an expert report from a medical doctor on the proper application of a wet mop to a floor—an impossible condition to meet. And, oh yes, she, the injured employee with no recourse, must pay for her employer's attorneys' fees and court costs.

---

[12]If workers' compensation benefits are provided, that is the employee's exclusive remedy against her employer. TEX. LAB. CODE ANN. § 408.001(a) (West 2006).

18

I respectfully dissent.

                                        Jack Carter
                                        Justice

Date Submitted:      December 5, 2013
Date Decided:        February 27, 2014