**Opinion issued September 18, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-14-00309-CV**

————————————

**MALLADI SUDHAKAR REDDY, M.D., Appellant**

**V.**

**DIANNA LYNN VEEDELL AND MAURY VEEDELL, Appellees**

---

**On Appeal from the 157th District Court**
**Harris County, Texas**
**Trial Court Case No. 2013-23734**

---

# O P I N I O N

A bicyclist was injured when she was struck by a car driven by a distracted doctor. Is her negligence claim against the doctor a "health care liability claim" under the Texas Medical Liability Act, requiring her to file an expert report to

establish that her claim is not frivolous? We conclude that it is not, and accordingly we affirm the trial court's ruling denying the doctor's motion to dismiss this case.

**Background**

Dianna and Maury Veedell sued Dr. Malladi Reddy for negligence and negligence per se arising from a collision between Reddy's car and Dianna's bicycle. The Veedells alleged that while looking at his mobile phone, Reddy backed his car into a road and collided with Dianna's oncoming bicycle, propelling her into and shattering the rear window of Reddy's car. Dianna sustained severe personal injuries. The Veedells' lawsuit alleged that Reddy failed to keep a proper lookout, backed unsafely and in a manner that interfered with other traffic, failed to yield the right of way, and violated section 545.415(a) of the Texas Transportation Code, which prohibits backing a vehicle "unless the movement can be made safely and without interference with other traffic." TEX. TRANSP. CODE ANN. § 545.415(a) (West 2011).

Reddy moved to dismiss the suit pursuant to the Texas Medical Liability Act (TMLA). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) (West Supp. 2014). He argued that the Veedells' claims alleged "injuries as the result of an automobile accident" and that he, "a physician, acted unsafely in the operation of his motor vehicle." Reddy relied on a memorandum opinion from the Fourteenth Court of Appeals to support his assertion that the Veedells' allegations constituted a health

2

care liability claim subject to the TMLA, and that their failure to file an expert report warranted dismissal. The question presented in *Ross v. St. Luke's Episcopal Hospital*, No. 14-12-00885-CV, 2013 WL 1136613 (Tex. App.—Houston [14th Dist.] Mar. 19, 2013, pet. granted) (mem. op.), was whether a lawsuit brought by a hospital visitor who slipped and fell on a polished lobby floor qualified as a health care liability claim. *Ross*, 2013 WL 1136613, at *1. Relying on the construction of the "safety" prong of the statutory definition of "health care liability claim" announced by the Supreme Court of Texas in *Texas West Oaks Hospital, L.P. v. Williams*, 371 S.W.3d 171 (Tex. 2012), the Fourteenth Court held that an "allegation pertaining to safety, standing alone and broadly defined," was sufficient to invoke the statute, and that no actual connection to health care was required. *Ross*, 2013 WL 1136613, at *1.

In light of this holding and the applicable statute,[1] Reddy argues that this case involves health care liability claims because (1) he, the defendant, is a physician, (2) the Veedells' claims pertained to "safety," and (3) the Veedells

---

[1]    TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (West Supp. 2014):

> "Health care liability claim" means a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

alleged that they were damaged by his act or omission. Considering that some other courts of appeals, unlike the Fourteenth Court, have required that a claim be at least indirectly related to health care to qualify as a safety claim under the statute,[2] Reddy also argued that the Veedells' claims met the indirect-relation standard because the phone call that distracted him "was from a hospital Dr. Reddy worked at." The evidentiary support for this argument was limited to Reddy's own deposition testimony that the caller "was the hospital, I believe." Accordingly, Reddy argued that the Veedells were required to file an expert report, and because they did not do so, he moved for dismissal of their claims with prejudice.

In response, the Veedells argued that whether a plaintiff's claim is a health care liability claim is a question of law that a court determines based on the underlying nature of the cause of action. Calling Reddy's arguments "patently absurd" and reasoning that the accident was completely unrelated to health care, the Veedells argued that theirs were not health care liability claims.

---

[2] *See, e.g.*, *Methodist Healthcare Sys. of San Antonio, Ltd., LLP v. Dewey*, 423 S.W.3d 516, 519 (Tex. App.—San Antonio 2014, pet. filed); *Weatherford Tex. Hosp. Co., LLC v. Smart*, 423 S.W.3d 462 (Tex. App.—Fort Worth 2014, pet. filed) ("[T]here must be some connection, even indirect at best, between the safety claim and the provision of health care for the claim to fall under the TMLA's health care liability claim definition."); *Doctors Hosp. at Renaissance, Ltd. v. Mejia*, No. 13-12-00602-CV, 2013 WL 4859592 (Tex. App.—Corpus Christi Aug. 1, 2013, pet. filed) (mem. op.) ("[T]he [*West Oaks*] court recognized a new type of healthcare liability claim—that is, one involving safety which is *indirectly* related to health care.").

4

The trial court denied the motion to dismiss, and Reddy filed this interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (West Supp. 2014).

**Analysis**

In his sole issue, Reddy argues that the acts of which the Veedells complain constitute a "safety" claim under the TMLA, the trial court erred in concluding otherwise, and the case should have been dismissed for failure to satisfy the statutory requirement of filing an expert report summarizing the applicable standards of care, the manner in which those standards were not met, and the causal relationship between that failure and the claimed injury. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.001(a)(13) & 74.351(b), (r)(6) (West Supp. 2014). We review such a claim for abuse of discretion. *See, e.g.*, *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). To the extent the characterization of a claim as a health care liability claim hinges on an interpretation of a statute or its application to established facts, that is a question of law which we review de novo. *See Tex. W. Oaks Hosp., L.P. v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012).

There is no dispute that Reddy is a physician or that the Veedells claim to have been injured as a result of his negligent acts. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13), (23)(A). Therefore we need only determine whether

5

the claims at issue implicate a claimed "departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care." *See id*. § 74.001(a)(13). Reddy argues that the claims allege personal injury proximately caused by a departure from standards of safety, and as such they are controlled by the Supreme Court's holding in *West Oaks*, which stated that a "safety claim" need not be directly related to health care in order to qualify as a health care liability claim under the TMLA. *Tex. W. Oaks Hosp.*, 371 S.W.3d at 186.

A similar issue involving safety claims and the application of *Texas West Oaks* was very recently decided by another panel of this court. In *Williams v. Riverside General Hospital, Inc.*, No. 01-13-00335-CV, 2014 WL 4259889 (Tex. App.—Houston [1st Dist.] Aug. 28, 2014, no pet. h.) (memo. op.), the plaintiff was a nursing assistant who sued her hospital employer for personal injuries arising from two on-the-job incidents: tripping over an extension cord left out by a co-worker, and slipping on a hospital floor due to a substance emitted by "a leaky piece of lab equipment." *Williams*, 2014 WL 4259889, at *1. The *Williams v. Riverside* panel distinguished *West Oaks* and held that "there must . . . be some *indirect*, reasonable relationship between claims and the provision of health care" for such claims to be health care liability claims. *Id*. at *7. The panel further reasoned that a personal-injury claim arising from tripping on an extension cord "is

6

a garden-variety slip-and-fall claim that is completely untethered from the provision of health care," and that "[t]he same holds true" for the claim based on slipping on the hospital floor. *Id.*

In this case, the Veedells alleged that Reddy was negligent by looking at his mobile phone while backing into a public street, failing to keep a proper lookout, backing unsafely and in a manner that interfered with other traffic, failing to yield the right of way, and violating the Texas Transportation Code.

Reddy contends that the Veedells' claims have an indirect relationship to health care. Reddy testified that he had backed halfway into the street when he stopped to answer a phone call. He said he was unable to obtain the phone records from his service provider due to the passage of time, but when asked if he recalled who called him, he testified, "It was the hospital, I believe." He did not remember which hospital. Reddy brought forth no other evidence pertaining to the nature or purpose of the phone call, yet he argues in his brief that "the nexus of Veedell's safety claim" was that he was "attending to health care issues when it was not safe to do so."

Reddy produced no conclusive evidence that he was attending to health-care issues when he stopped his car in the street. The evidence shows only that he answered a phone call, of unspecified nature, from an unknown caller that could have been an unidentified hospital. The trial court would have been entirely within

7

its discretion to conclude that this evidence failed to prove facts establishing an indirect relationship between the Veedells' claims and the provision of health care. *See Williams*, 2014 WL 4259889, at \*7; *see also DHS Mgmt. Servs., Inc. v. Castro*, 435 S.W.3d 919, 922 (Tex. App.—Dallas 2014, no pet.) (holding that cause of action arising out of three-car collision involving a van containing medical imaging equipment was not a health care liability claim because services to be provided by medical-imagining defendant did not "bear even indirectly on the claims being made").

The Veedells' claims involve a motorist's liability for causing a collision with a bicyclist. As such, this case is essentially indistinguishable from *Williams v. Riverside* insofar as the claims may be characterized as "garden-variety" personal-injury claims that are "completely untethered from the provision of health care." *Williams*, 2014 WL 4259889, at \*7. Accordingly, they do not qualify for the "safety" category of health care liability claims.

Having considered the gravamen of the Veedells' claims as well as the evidence brought forth by Reddy to support his contention that their claims were indirectly related to health care, we conclude that Reddy has not carried his burden to prove that the Veedells' causes of action are health care liability claims for which an expert report was required. *Cf. Brown v. Villegas*, 202 S.W.3d 803, 806 (Tex. App.—San Antonio 2006, no pet.) (putative health care provider, as the

movant, bore the burden to present evidence to establish applicability of TMLA); *Obstetrical & Gynecological Associates, P.A. v. Hardin*, No. 01-13-00236-CV, 2013 WL 6047595, at \*2 (Tex. App.—Houston [1st Dist.] Nov. 14, 2013, no pet.) (memo. op.) (same).

## Conclusion

A bicyclist's negligence claim against a distracted doctor driver who caused a vehicular collision is not a "health care liability claim" subject to Texas Medical Liability Act. We therefore hold that the trial court correctly denied Reddy's motion to dismiss, and we overrule his sole issue. We affirm the interlocutory order of the trial court.

## PER CURIAM

Panel consists of Justices Massengale, Brown, and Huddle.

Justice Massengale, concurring.