

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
| CECILIA M. SIMMONS, | | No. 08-13-00204-CV |
| | § | |
| Appellant, | | Appeal from the |
| | § | |
| v. | | County Court at Law No. 6 |
| | § | |
| OUTREACH HEALTH COMMUNITY | | of El Paso County, Texas |
| CARE SERVICES, L.P., d/b/a | § | |
| OUTREACH HEALTH SERVICES, | | (TC# 2011-2789) |
| | § | |
| Appellee. | | |

**O P I N I O N**

In two issues, Appellant Cecilia Simmons, a certified nursing assistant, challenges the trial court's ruling that the workplace safety claim she brought against her employer for injuries she sustained while moving a patient constituted a health care liability claim ("HCLC") for which the filing of an expert report was required under the Texas Medical Liability Act ("TMLA" or "the Act"). Appellant also attacks the constitutionality of TMLA's expert-report requirement as applied to her under the Texas Constitution's Open Courts Provision and the Due Process Clause of the U.S. Constitution's Fourteenth Amendment.

We conclude that Appellant's claim constitutes a breach of safety standards HCLC under the Act, and that her failure to serve an expert report detailing the relevant standard of care is

1

fatal. We also conclude that her as-applied constitutional challenges to the Act are without merit. As such, we affirm the trial court's dismissal with prejudice.

## BACKGROUND

At the time she sustained her injuries, Appellant worked for Outreach Health Community Care Services ("Outreach"), a non-subscriber to the Texas worker's compensation plan and the operator of a state-licensed nursing home and home-care service businesses. Appellant's job responsibilities involved supporting a client's self-care and independence by providing bathing, grooming, laundry, meal preparation, assistance with medication, and "transfer/ambulation," among other things. On October 4, 2010, Appellant attempted to lift, turn, and move one of her homebound, quadriplegic patients. The patient weighed 262 pounds. As she tried to perform these actions, Appellant felt two "pops" and injured her lower back.

Appellant brought suit against Outreach, alleging that her injuries were proximately caused by Outreach's breach of the duty to provide a safe work environment. Nearly a year after Appellant filed suit, the Texas Supreme Court issued its opinion in *Texas West Oaks Hosp., L.P., v. Williams*, 371 S.W.3d 171 (Tex. 2012), holding *inter alia* that the TMLA's expert report requirement applied to claims brought against a health care provider not only by patient plaintiffs, but by certain health care provider employees as well.[1] Almost a month and a half after the Texas Supreme Court handed down the *Williams* opinion, Outreach moved to dismiss, arguing that Appellant's personal injury claim was actually an HCLC requiring submission of an expert report, and that since more than 120 days had passed since Appellant filed suit, Outreach was entitled to dismissal with prejudice since it had not been served with a report. The trial court subsequently granted Outreach dismissal of Appellant's claims with prejudice.

---

[1] At least one court of appeal has applied the expert report requirement "retroactively" to an employee claimant case that was pending at the time *Williams* was decided. *See CHCA Bayshore, L.P. v. Salazar*, No. 14-12-00928-CV, 2013 WL 1907888, at *5 (Tex.App.--Houston [14th Dist.] May 7, 2013, pet. denied).

This appeal followed.

## DISCUSSION
### I.

In Issue One, Appellant maintains that her duty to provide a safe workplace claim does not constitute an HCLC because her injury was unconnected to the rendition of health care, her actions did not implicate the safety of the patient, and an expert opinion was unnecessary to set out the standard of care, since her claim would be a standard negligence claim but for the defendant's status as a health care provider. We disagree.

### *Standard of Review and Applicable Law*

Whether a claim constitutes an HCLC is a question of statutory construction reviewed *de novo*. *Loaisiga v. Cerda*, 379 S.W.3d 248, 254-55 (Tex. 2012). In analyzing the claim, the court considers the record as a whole, the pleadings, and the factual allegations contained therein. *Id*. at 259.

An HCLC consists of three elements: (1) the defendant must be either a health care provider or a physician; (2) the plaintiff's claim must concern treatment, lack of treatment, or a departure from the accepted standards of care on one of four predicate grounds ("the Four Breaches"); and (3) the conduct complained of in element two proximately caused the plaintiff's injury or death. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 74.001(a)(13)(West 2011); *Williams*, 371 S.W.3d at 179-80. The Four Breaches covered by element two include departures from the accepted standards of (a) medical care, (b) health care, (c) safety, and (d) professional or administrative services directly related to health care.[2] *Id.* at 180.

---

[2] "Medical care" and "health care" are terms of art specifically defined in the statute. "'Health care' means any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." TEX.CIV.PRAC.& REM.CODE ANN. § 74.001(a)(10). "Medical care" means any act defined as practicing medicine under Section 151.002, Occupations Code, performed or furnished, or which should have been performed, by one licensed to

3

A plaintiff "claimant" under the statute does not need to be the patient of a health care provider or physician for her claim to be considered an HCLC. *Williams,* 371 S.W.2d at 179 (classifying a mental health worker's workplace safety claim against his employee as an HCLC where plaintiff was injured by a patient under his care). Rather, "[t]he breadth of the statute's text essentially creates a presumption that a claim is an HCLC if it is against a physician or health care provider and is based on facts implicating the defendant's conduct during the course of a patient's care, treatment, or confinement." *Loaisiga*, 379 S.W.3d at 256. The presumption may be rebutted where the only possible connection between the plaintiff, the defendant, and the conduct is situs in a health care setting or the defendant's status as a health care provider. *Id.*

In assessing whether a claim is an HCLC, the Court looks to the content and not the form of the pleadings to see if the alleged conduct falls within the TMLA's legislated scope. *Williams*, 371 S.W.3d at 176 (court must look to the "gravamen of the claim . . . against the health care provider"). A plaintiff cannot dodge the TMLA's strictures through artful pleading; where a pleaded tort or contract claim constitutes an HCLC, the TMLA's procedural requirements apply regardless of how the claim is recast. *Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842, 851 (Tex. 2005). A defendant is entitled to dismissal with prejudice of any HCLC if a plaintiff fails to serve the defendant with a statutorily-compliant expert report on liability or causation within 120 days of the suit's inception. TEX.CIV.PRAC.&REM.CODE ANN. § 74.351(b), (j).

### *Analysis*

In her brief, Appellant does not appear to dispute that her employer is a health care provider under the statute. Instead, this case implicates two of the predicate breaches identified

---

practice medicine in this state for, to, or on behalf of a patient during the patient's care, treatment, or confinement. TEX.CIV.PRAC.&REM.CODE ANN. § 74.001(a)(19).

4

by statute:  breach of the accepted standards of health care, and breach of the accepted standards of safety.  Appellant correctly points out that to classify a claim as a health care standards HCLC, an alleged act or omission in a claim must be "inseparable or integral part of the rendition of medical services." *See Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 664 (Tex. 2010)(intepreting TMLA's predecessor statute).  The existence of a physician-patient relationship and a nexus between the plaintiff's claim and that relationship are also vital before a claim may be classified as a health care standards HCLC.  *Psychiatric Solutions, Inc. v. Palit*, 414 S.W.3d 724, 726 (Tex. 2013).  Appellant argues that her claim, as pleaded, implicates only the duty Outreach owes to her to ensure she remained free from injury in the workplace, and not any medical standard of care it owed to the patient.  In Appellant's view, any rendition of health care services to the patient while she was moving him was too tangential or incidental to trigger the TMLA.

Outreach disputes her contentions, but also counters that even if Appellant's workplace safety claim cannot be categorized as involving a breach of the standards of health care, her claim still constitutes an HCLC under the much broader breach of safety standards predicate. We agree.  Safety as used in the TMLA carries its plain, ordinary meaning "as the condition of being untouched by danger; not exposed to danger; secure from danger, harm or loss."  *Williams*, 371 S.W.3d at 184 [Internal quotation marks omitted].  In *Williams*, the Texas Supreme Court held that the breach of safety predicate sweeps broader than the breach of health care predicate, noting that the phrase "directly related to health care" does not modify the noun "safety" in Section 74.001(a)(13).  *Id*. at 186.  Thus, "the safety component of HCLCs need not be directly related to the provision of health care . . . ."  *Id*.[3]

---

[3] We also note that the *Williams* case prompted the Texas Legislature in 2013 to contemplate amending the TMLA's definition of a health care liability claim to clarify that it does "not include claims arising from an injury to or a

Our sister courts are split on the issue of whether, after *Williams*, there is any conceivable limitation on the scope of the safety prong. *See Rio Grande Regional Hosp. v. Salinas*, No. 13-13-00557-CV, 2014 WL 3805141, at *2 n.1 (Tex.App.--Corpus Christi July 31, 2014, pet. filed)(outlining the division among courts of appeals)[4]. Six courts hold that a safety claim must be tethered at least *indirectly* to the rendition of health care before it falls within the TMLA's ambit; two other courts maintain that the 2003 amendments jettisoned any nexus requirements between safety and rendition of health care by enacting statutory language so sweeping that the TMLA essentially embraces all safety-related claims brought against any health care provider defendant for any reason, including garden-variety premises liability claims that would otherwise not require expert opinions on causation. *Id*.; *see also Diversicare*, 185 S.W.3d at 860-61 (Jefferson, C.J., concurring and dissenting)(noting that the specific source of danger triggering the TMLA's safety predicate "is without limitation").

While we are strongly inclined to agree with the majority approach to this issue, we need not dive into the fray in this case. Under either approach, Outreach prevails. Assuming the safety prong is in fact limited to only those claims which relate at least indirectly to the rendition of health care, Appellant's safe workplace claim stems from injuries sustained while rendering health care services to a patient within the scope and course of her employment. In *CHCA Bayshore, L.P. v. Salazar*, No. 14-12-00928-CV, 2013 WL 1907888, at *4 (Tex.App.--Houston [14th Dist.] May 7, 2013, pet. denied)(mem. op.), the Houston Fourteenth Court of Appeals concluded that a health care worker injured "while attempting to maneuver a patient" through a

death of a person who is not a patient, including employment and premises liability claims." *See* Tex. H.B. 2644, 83d Leg., R.S. (2013). Unfortunately, House Bill 2644 was not enacted. *Hart v. Select Specialty Hosp.-Houston L.P.,* No. 4:13-CV-335, 2014 WL 710287, at *4 n.2 (S.D. Tex. Feb. 19, 2014).

[4] *See also Williams v. Riverside General Hospital, Inc.,* No. 01-13-00335-CV, 2014 WL 4259889, at *4-*5 (Tex.App.--Houston [1st Dist.] Aug. 28, 2014, no pet.h.)(mem. op.); *Reddy v. Veedell,* No. 01-14-00309, 2014 WL 4651211 (Tex.App.--Houston [1st Dist.] Sept. 18, 2014, pet. filed)(adopting indirect nexus approach).

door that required a second person to hold it open presented a safety prong HCLC, since she alleged the hospital breached safety duties it owed to its employees while in the course and scope of dealing with patients. The facts in this case are similar. *See also Tillman v. Mem. Hermann Hosp. Sys.*, 440 S.W.3d 203, 206, 209 (Tex.App.--Houston [14th Dist.] 2013, pet. denied)(employee's safe workplace claim was a safety HCLC where employee alleged injury resulted from lifting intubated 300-pound patient).

Appellant encourages us to disregard *Salazar* and adopt the approach set out in *Baylor Univ. Med. Ctr. v. Lawton*, No. 05-13-00188-CV, 2013 WL 6163859, at *1-*3 (Tex.App.--Dallas Nov. 25, 2013, pet. filed). However, the distinction Appellant tries to draw is inapplicable under these facts. *Lawton* involved an employee who suffered injury after inhaling certain chemicals used to treat the hospital's sewer system. *Id.,* at *1. There, the plaintiff presented a garden-variety premises-liability claim wholly divorced from health care rendition, save for the fact that the injury occurred at a hospital.

Here, Appellant's connection to the health care provider is more than the situs of injury. Appellant was attempting to move the patient in order to facilitate the patient's care, which was a task that explicitly fell within the course and scope of her employment as the employee of a health care provider. Furthermore, unlike *Salazar* in which there appeared to be a threat only to the safety of the employee and not to any patient, Outreach's alleged breach of safety standards in relation to Appellant also bears on Appellant's provision of safe health care to her patient, since any alleged inadequate training could result in injury to both her and her patient. *Cf. Williams*, 371 S.W.3d at 194 (noting in breach of health care predicate case that reference to standards governing physician-patient relationship necessary to determine liability of employer to employee caring for patient under facts of the case).

7

Finally, Appellant urges us to nevertheless disregard the expert report requirement because a provision of the TMLA states that "[n]othing in this section shall be construed to require the serving of an expert report regarding any issues other than an issue relating to liability or causation." TEX.CIV.PRAC.&REM.CODE ANN. § 74.351(j)(West Supp. 2014). Appellant contends that this provision shows no expert report is required, since the issues of liability and causation in this case are intuitive and a matter of common tort law, and an expert report would therefore serve no purpose. Justice Lehrmann advanced a similar argument in his dissent in *Williams*, 371 S.W.3d at 196 (Lehrmann, J., dissenting)(opining that the expert report requirement "contemplates that the lawsuit will center on a physician's treatment of a patient's illness, injury, or condition, not on the adequacy of a workplace or the training provided to an employee"); *see also Omaha Healthcare Center, L.L.C. v. Johnson*, 344 S.W.3d 392, 396 (Tex. 2011)(Lehrmann, J., dissenting)(arguing that forcing a plaintiff to provide an expert report in case where nursing home patient died from spider bite was "contrary to the Legislature's intent, belies common sense, and contorts the role of experts in health care litigation"). However, there is no statutory exception from the expert report requirement, even in cases where expert testimony is ultimately unnecessary to determine liability on the merits. *See Williams*, 371 S.W.3d at 182. As such, the difficulty with which an expert report is obtained or whether that report would even be helpful on the merits appears to be immaterial in light of the statute's plain language and its current interpretations.

We take note of Justice Massengale's concurring opinion in *Reddy,* in which he states:

> Even though the Legislature does not write statutes for the courts' approval, it still could clarify the TMLA in response to manifest interpretive difficulties. Not only could this relieve the courts and litigants from the continuing burdens of litigation over the procedural standards, it could also better ensure that the standards applied are those actually approved by the Legislature, as opposed

8

to a standard reflecting the courts' best good-faith effort to implement an opaque statute. Legislatures have the right to expect courts to faithfully implement laws as enacted. When the words fail, the Legislature has a corresponding responsibility to provide clarity where it is wanting. Rather than leaving the difficult work of clarification to the courts, which have confessed their struggle with the task of reaching consensus about the meaning of the Act, the Legislature could-and, I respectfully suggest, should[ ]study the historical record of how the Texas Medical Liability Act is being applied in the courts, evaluate which outcomes do and do not reflect a desirable application of the statutory scheme, and then amend the statute to more clearly indicate what kinds of claims are intended to be subject to these special procedures.

*Reddy,* 2014 WL 4651211, at *5 (Massengale, J., concurring).

Because we hold that the substance of Appellant's allegations constituted an HCLC under the broad "safety" ground, we need not address whether the same conduct would constitute an HCLC under the narrower "departure from accepted standards of health care" ground. *See Morrison v. Whispering Pines Lodge I, L.L.P.*, 428 S.W.3d 327, 335 n.10 (Tex.App.--Texarkana 2014, pet. filed). Appellant was required to file an expert report, and her failure to do so within 120 days entitled Outreach to dismissal with prejudice. TEX.CIV.PRAC.&REM.CODE ANN. § 74.351(b), (j). The trial court did not err by granting dismissal.

Issue One is overruled.

## II.

We next turn to Appellant's alternative, as-applied constitutional challenges. We understand her to bring overlapping Open Courts and procedural due process claims based on three rationales. Because the Open Courts Provision represents "a facet of due process," *Hitchcock v. Board of Trustees Cypress-Fairbanks Indep. Sch. Dist.*, 232 S.W.3d 208, 217 (Tex.App.--Houston [1st Dist.] 2007, no pet.), and because both constitutional challenges embrace the ultimate question of whether any denial or constructive denial of relief for her legal

9

claim under the Act is reasonable, we address both points in a consolidated analysis below.

***The Open Courts Provision and Procedural Due Process***

The Texas Constitution's Open Courts Provision provides that "[a]ll courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." TEX.CONST. art. 1, § 13. The provision serves as a judicial check on the legislative power, "prohibit[ing] legislative bodies from arbitrarily withdrawing all legal remedies from one having a cause of action well established and well defined in the common law." *Lebohm v. City of Galveston*, 154 Tex. 192, 197, 275 S.W.2d 951, 954 (Tex. 1955). In assessing a statute under the Open Courts Provision, we begin with the assumption that the law is constitutional. *Marquez v. Providence Mem. Hosp.*, 57 S.W.3d 585, 595 (Tex.App.--El Paso 2001, pet. denied). The party challenging the law's constitutionality under the Open Courts Provision must then show "(1) a cognizable common-law cause of action is being restricted; and (2) the restriction is unreasonable or arbitrary when balanced against the purpose and basis of the statute." *Id*. "[A] mere difference of opinion, where reasonable minds could differ, is not a sufficient basis for striking down legislation as arbitrary or unreasonable." *Smith v. Davis*, 426 S.W.2d 827, 831 (Tex. 1968).

The Due Process Clauses of the Texas Constitution and the Fourteenth Amendment to the United States Constitution also serve as restraints on legislative power in establishing procedural prerequisites to vindicating a claim. The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S CONST. Amend. XIV, § 1. Likewise, the Texas Constitution's Due Process Clause provides that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges, or immunities, or in any manner disfranchised, except by the due course of the law of the land." TEX.CONST. art. I,

10

§ 19. Notice and the opportunity to be heard are the cornerstones of due process. Before the State may deprive a person of property, the person must be afforded notice and the opportunity to be heard. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 1153, 71 L.Ed.2d 265 (1982). A legal claim is "property" recognized under the Fourteenth Amendment. *Id*. at 428, 102 S.Ct. at 1154. Therefore, any restriction on established adjudicatory procedures that functions as "the equivalent of denying [a litigant] an opportunity to be heard upon their claimed right[s]" constitutes deprivation of property without due process of law. *Boddie v. Connecticut*, 401 U.S. 371, 380, 91 S.Ct. 780, 787, 28 L.Ed.2d 113 (1971).

### *Analysis*

Appellant acknowledges that a large corpus of adverse authority upholds the constitutionality of both the prior and current versions of the statute. *See Solomon-Williams v. Desai*, No. 01-08-00733-CV, 2009 WL 1813135, at *3 (Tex.App.--Houston [1st Dist.] June 25, 2009, pet. denied)(mem. op.)(listing cases). Nevertheless, Appellant contends the TMLA is unconstitutional as applied to her under the Texas Constitution's Open Courts Provision for three reasons.

First, she maintains the statute predicates tort relief on the fulfillment of an impossible condition. *See Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 355 (Tex. 1990)("the legislature has no power to make a remedy . . . contingent upon an impossible condition"). Specifically, it requires her to procure the opinion of an expert on the subject matter of this case when no such expert exists. Second, she also argues the expert report procedural requirements are "arbitrary and capricious" because an expert opinion on the applicable standard of care in this case, if it were indeed possible to procure, is totally unnecessary. Instead, the case can be easily resolved with reference to the duty to provide a safe workplace standard applicable in all other

11

employment cases. Finally, Appellant argues that the 2003 amendment's elimination of the thirty-day grace period for inadvertent failure to comply with the expert report requirement unreasonably leaves her without remedy and places the TMLA in constitutional quicksand. *See Gajewski v. Jackson*, 351 S.W.3d 608, 611 (Tex.App.--El Paso 2011, no pet.)(noting that the 2003 amendments eliminated long-standing grace period and permitted no exception to 120-day rule even where defendant purposefully eluded process to defeat the cause of action). She reiterates these same concerns as procedural due process claims under the state and federal constitutions, averring that the TMLA's expert report requirement is so onerous as to effectively deny her the right to be heard before her claim is destroyed by the State.

"A claimant who brings an open courts challenge has the burden of showing that the expert-report requirements actually prevented him from pursuing his claims." *Herrera v. Seton Northwest Hosp.*, 212 S.W.3d 452, 461 (Tex.App.--Austin 2006, no pet.). Where the challenging party produces "no evidence that these requirements actually worked to prevent her from pursuing her claim[,]" we need not address the constitutional arguments. *See Marquez*, 57 S.W.3d at 595. Here, Appellant has failed to demonstrate that the unconstitutional application of the expert report requirement, as opposed to her own failure to timely provide an expert report, prevented her from pursuing her claim. *Id.*; *accord Solomon-Williams*, 2009 WL 1813135, at *4. As such, we find that her constitutional challenges are without merit.

Issue Two is overruled. The trial court's judgment is affirmed.


November 7, 2014

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, J., and Parks, Judge
Parks, Judge (Sitting by assignment)