

**NUMBER 13-14-00004-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**VALLEY REGIONAL MEDICAL CENTER,**           **Appellant,**

**v.**

**MARIA GUADALUPE CAMACHO,**           **Appellee.**

---

### On appeal from County Court at Law No. 1
### of Cameron County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza and Benavides
### Memorandum Opinion by Justice Garza

In this appeal, we are once again faced with the "knotty" issue of whether a plaintiff's claim is a health care liability claim ("HCLC") under the Texas Medical Liability Act ("TMLA") and therefore subject to that statute's expert report requirement. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (West, Westlaw through 2013 3d C.S.); *Loaisiga v. Cerda*, 379 S.W.3d 248, 265 (Tex. 2012) (Lehrmann, J., concurring and dissenting)

("Whether a claim against a health care provider is [an HCLC] is a knotty issue this Court has repeatedly struggled with."). Appellant Maria Guadalupe Camacho failed to timely serve an expert report and the trial court denied a motion to dismiss filed by appellee, Valley Regional Medical Center ("VRMC"). Because we find that the claim raised by Camacho is an HCLC, we reverse and remand.

## I. BACKGROUND

Camacho was injured on August 29, 2012, when she was visiting a family member at the women's center at VRMC. Her first amended petition, filed on May 20, 2013, alleged that, as she was walking through a set of automatic sliding doors, "the doors suddenly closed with no warning," "pinn[ing] her between the sliding doors," "painfully crushing" her and causing her to suffer injury to her right shoulder. She alleged that VRMC was negligent by (1) "permitt[ing] such condition to exist" and (2) failing "to adequately correct the conditions or warn [Camacho], despite the fact that [VRMC] knew, or in exercise of ordinary care, should have known of the existence of the dangerous condition and that there was likelihood of someone being injured." She further alleged that

> the dangerous condition of [the] door and premises had continued for such a period of time that it should have been noticed by [VRMC] and that [VRMC] should have warned patrons, such as [Camacho], of the condition and/or should have corrected the dangerous condition of the defective motion sensor of the sliding doors before [Camacho] was crushed so that it would not be dangerous if [VRMC] had exercised ordinary care in the inspection and maintenance of its premises.[1]

On August 27, 2013, VRMC filed a motion to dismiss, asserting that the claim is

---

[1] Camacho also sued the manufacturer of the door, Assa Abloy Entrance Systems US Inc. f/k/a Besame US Inc. ("Assa Abloy"). Assa Abloy did not join in VRMC's motion to dismiss and is not a party to this interlocutory appeal.

an HCLC and that Camacho was required, but failed, to file an expert medical report within 120 days of filing suit. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b). A hearing was held on October 29, 2013. At the hearing, VRMC's counsel represented to the trial court that the "sliding doors" at issue in Camacho's suit were "hooked up to an alarm called the Infant Abduction System." Counsel explained that the system, which is designed to prevent the abduction of newborn babies from the nursery section of the hospital, causes the sliding doors to automatically close when it detects the presence of an ankle bracelet which is secured to each infant. In response, Camacho's counsel offered as evidence several pages of a local phone book and stated: "I wanted to find a physician who specialized in medical care/engineering door issues, and I'm offering [this exhibit] to prove the point they don't exist."

The trial court later denied VRMC's motion. Subsequently, VRMC filed a motion to reconsider which included an affidavit by Sergio Loya, VRMC's Director of Plant Operations. Loya averred as follows:

> My investigation of this accident indicates that it occurred at the Women's Pavillion which includes the Labor and Delivery, Post Partum and Nursery areas. The Infant Abduction System alarm sounds whenever a sensor attached to a baby in the Nursery or Post Partum is within a specified distance of the swinging doors. The Infant Abduction System is designed to close and lock the doors as a safety feature that stops a baby from being abducted from the hospital. My investigation reveals that this accident occurred when the alarm sounded and the doors were closing.

The record also contains an affidavit by Camacho stating:

> When the doors closed there was no audible warning nor was there a sign or visual warning that these doors were part of a security system or would close without reason. The doors just closed quickly injuring me. I later understood that the doors would close if a child was removed without proper authority, however, I was not carrying a child nor was there a child near me; in fact there was no child in sight.

3

The trial court denied VRMC's motion to reconsider. The judgment denying the motion specifically stated that the exhibits offered at the hearing were admitted and considered in evaluating the motion to dismiss. This interlocutory appeal followed. *See id.* § 51.014(a)(9) (West, Westlaw through 2013 3d C.S.) (authorizing appeal of interlocutory order denying motion to dismiss for failure to file a medical expert report).

## II. DISCUSSION

### A. Applicable Law and Standard of Review

Under the Texas Medical Liability Act ("TMLA"), a plaintiff seeking damages in an HCLC must serve a medical expert report upon each party's attorney no later than the 120th day after the date the original petition was filed. *Id.* § 74.351(a) (stating that expert report requirement applies to any "claimant" asserting an HCLC); *see id.* § 74.001(a)(2) (defining "claimant" as a person seeking damages in an HCLC). The statute defines HCLC as:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

*Id.* § 74.001(a)(13) (West, Westlaw through 2013 3d C.S.).

Whether a claim is an HCLC under the TMLA is a matter of statutory construction, which is a purely legal question that we review de novo. *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012). To determine whether a cause of action falls under the statute's definition of an HCLC, we examine the claim's underlying nature. *Yamada v. Friend*, 335 S.W.3d 192, 196 (Tex. 2010). Artful pleading does not alter that nature. *Id.* In making the determination, we consider the entire court record, including

4

the pleadings, motions and responses, and relevant evidence properly admitted. *Loaisiga*, 379 S.W.3d at 258.

Claims "which require[] the use of expert health care testimony to support or refute the allegations" are HCLCs. *Psychiatric Solutions, Inc. v. Palit*, 414 S.W.3d 724, 727 (Tex. 2013); *see Tex. W. Oaks*, 371 S.W.3d at 182. However, the inverse is not true: "[e]ven when expert medical testimony is not necessary, the claim may still be an HCLC." *Tex. W. Oaks*, 371 S.W.3d at 182 (citing *Murphy v. Russell*, 167 S.W.3d 835, 838 (Tex. 2005) ("The fact that in the final analysis, expert testimony may not be necessary to support a verdict does not mean the claim is not [an HCLC].")).

VRMC alleged in its motion to dismiss that the claim is an HCLC because it alleges a "departure from accepted standards of . . . safety." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13). "Safety" is not defined in the statute but is commonly understood as "the condition of being untouched by danger; not exposed to danger; secure from danger, harm or loss." *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 855 (Tex. 2005).

The Texas Supreme Court considered the extent to which the TMLA covers "safety claims" in *West Oaks*. *See* 371 S.W.3d at 184–85. In that case, a majority of the Court espoused a construction of the statutory definition of HCLC under which the phrase "directly related to health care" modifies "professional or administrative services," but does not modify the term "safety." *Id.* (noting that, under the "last antecedent" doctrine of statutory interpretation, "a qualifying phrase should be applied only to the portion of the sentence immediately preceding it"). In other words, if a claim is based on an alleged departure from accepted standards of "safety," the "safety component . . . need not be directly related to the provision of health care." *Id.* at 186. In *West Oaks*, which involved

the assault of a hospital employee by a psychiatric patient on hospital grounds, the Court held that the plaintiff's claim was subject to the TMLA because "the dispute . . . is, at its core, over appropriate standards of care owed to [a] mental health professional in treating and supervising a psychiatric patient." *Id.* at 182. According to the Court, "[i]t would blink reality to conclude that no professional mental health judgment is required to decide what those should be, and whether they were in place at the time of [the plaintiff]'s injury." *Id.*[2]

In the years since *West Oaks* was decided, Texas appellate courts have had no shortage of opportunities to apply its reasoning to other factual scenarios. We did so in *Doctor's Hospital at Renaissance, Ltd. v. Mejia*, a slip-and-fall case. No. 13-12-00602-CV, 2013 WL 4859592, at *2–4 (Tex. App.—Corpus Christi Aug. 1, 2013, pet. filed) (mem. op.). The plaintiff, Mejia, was not a patient or employee of the hospital but instead was visiting her father who was recovering from surgery. *Id.* at *1. Mejia, like Camacho, alleged that the hospital was negligent by failing to ensure her safety. *Id.* The trial court found that the claim was an HCLC and dismissed because Mejia failed to file an expert report. *Id.* On appeal, we noted that, although "the precise boundaries of the safety prong remain undefined," the supreme court has acknowledged that "they are not limitless." *Id.* at *2 (citing *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 664 (Tex. 2010) ("[I]t is apparent that the Legislature did not intend for standards of safety to extend to every

---

[2] The supreme court reaffirmed its *West Oaks* holding in *Psychiatric Solutions, Inc. v. Palit*, where the plaintiff was a nurse who was injured "while physically restraining a psychiatric patient during a behavioral emergency." 414 S.W.3d 724, 725 (Tex. 2013). A majority of the Court held the claim alleged departures from accepted standards of safety and accepted standards of health care in part because "appropriate supervision and security of patients . . . at a psychiatric facility [is] integral to the patient's care and confinement . . . ." *Id.* at 726. Justice Boyd, joined by Justice Lehrmann, filed a concurring opinion in which he concluded, contrary to *West Oaks*, that "the Legislature intended the phrase 'directly related to health care' to modify the term 'safety' . . . and thus claims asserting a departure from accepted safety standards are health care liability claims only if the safety standards are 'directly related to health care.'" *Id.* at 729 (Boyd, J., concurring). Justice Boyd concurred in the result because he found that, in any event, the plaintiff's safety claim was "directly related to health care." *Id.* at 731.

negligent injury that might befall a patient."); *Diversicare*, 185 S.W.3d at 854 ("There may be circumstances that give rise to premises liability claims in a healthcare setting that may not be properly classified as [HCLC]s, but those circumstances are not present here."")); *see Loaisiga*, 379 S.W.3d at 257 ("[W]e fail to see how the Legislature could have intended the requirement of an expert report to apply under circumstances where the conduct of which a plaintiff complains is wholly and conclusively inconsistent with, and thus separable from, the rendition of 'medical care, or health care, or safety or professional or administrative services directly related to health care' even though the conduct occurred in a health care context."). Moreover, we noted that the *West Oaks* Court "stopped short of concluding that all premises liability claims involving a healthcare defendant are [HCLC]s." *Mejia*, 2013 WL 4859592, at *2 (citing *Tex. W. Oaks*, 371 S.W.3d at 183).

In an attempt to reconcile the supreme court's holdings on this issue—on the one hand, that safety claims need not be "directly related" to health care to come within the scope of the TMLA; but on the other hand, that not *all* safety claims are within its scope— we narrowly construed *West Oaks* as "recogniz[ing] a new type of [HCLC]—that is, one involving safety which is *indirectly* related to health care." *Id.* (emphasis in original). We held that, even after *West Oaks*, a safety claim must still "involve a more logical coherent nexus to health care" than just "[t]he simple fact that an injury occurred on a health care provider's premises . . . ." *Id.* at *3.[3] Most Texas appellate courts that have considered the issue have also adopted this narrow construction of *West Oaks*. *See E. El Paso*

---

[3] VRMC also argues on appeal that *Mejia* incorrectly construed *West Oaks* and that the two cases conflict. We disagree and therefore decline the invitation to revisit our holding in *Mejia*.

7

*Physicians Med. Ctr., L.L.C. v. Vargas*, No. 08-13-00358-CV, 2014 WL 5794622, at *1, *3 (Tex. App.—El Paso Nov. 7, 2014, pet. filed) (holding no HCLC where plaintiff was injured after hospital's automatic doors malfunctioned and closed on her prematurely); *Methodist Healthcare Sys. of San Antonio, Ltd., LLP v. Dewey*, 423 S.W.3d 516, 519 (Tex. App.—San Antonio 2014, pet. filed) (holding that a "garden-variety slip and fall case" on hospital grounds but "untethered" from health care is not an HCLC); *Weatherford Tex. Hosp. Co., L.L.C. v. Smart*, 423 S.W.3d 462, 463 (Tex. App.—Fort Worth 2014, pet. filed) (holding no HCLC where plaintiff slipped on a puddle of water in the hospital lobby after visiting a patient); *Williams v. Riverside Gen. Hosp., Inc.*, No. 01-13-00335-CV, 2014 WL 4259889, at *7 (Tex. App.—Houston [1st Dist.] Aug. 28, 2014, no pet. h.) (mem. op.) ("[W]e do not interpret [*West Oaks*] to mean that all safety claims that occur in a health care setting—even claims that are otherwise completely untethered from health care—are HCLCs."); *Christus St. Elizabeth Hosp. v. Guillory*, 415 S.W.3d 900, 902–03 (Tex. App.—Beaumont 2013, pet. filed) (finding that a claim brought by an injured hospital visitor was not an HCLC where "the gravamen of [plaintiff's] petition is that the hospital breached standards of ordinary care to a visitor present in a common area of the hospital"); *Baylor Univ. Med. Ctr. v. Lawton*, 442 S.W.3d 483, 487 (Tex. App.—Dallas 2013, pet. filed) ("[W]e do not believe [*West Oaks*] encompasses safety claims that are completely untethered from health care."); *Good Shepherd Med. Ctr.-Linden, Inc. v. Twilley*, 422 S.W.3d 782, 788–89 (Tex. App.—Texarkana 2013, pet. denied) (plaintiff was injured when he fell from a ladder attached to hospital building, and again when he tripped and fell over "a mound of hardened cement" on hospital property; court held that "'safety' claims completely unrelated to health care are . . . excluded from the ambit of the

8

legislated scope of the TMLA")[4]; *but see E. Tex. Med. Ctr. Reg'l Health Care Sys. v. Reddic*, 426 S.W.3d 343, 348 (Tex. App.—Tyler 2014, pet. filed) (holding, where plaintiff was a visitor who slipped in the hospital lobby, that the claim is an HCLC); *Ross v. St. Luke's Episcopal Hosp.*, No. 14-12-00885-CV, 2013 WL 1136613, at *1 (Tex. App.—Houston [14th Dist.] Mar. 19, 2013, pet. granted) (mem. op.) (broadly construing *West Oaks* as extending the scope of the TMLA to any "allegation pertaining to safety" and finding, "[c]ompelled by stare decisis," that a "garden-variety slip and fall case" was an HCLC).[5]

---

[4] Other cases in which claims have been ruled not to be HCLCs under this narrow construction of *West Oaks* include *Texas Health Presbyterian Hospital Dallas v. Burch*, No. 05-14-00665-CV, 2015 WL 273119, at *1–2 (Tex. App.—Dallas Jan. 22, 2015, no. pet. h.) (mem. op.) (visitor slipped on a puddle of water on the floor), *Watson v. Good Shepherd Medical Center*, No. 06-14-00025-CV, 2015 WL 222331, at *1, *5 (Tex. App.—Texarkana Jan. 15, 2015, no. pet. h.) (visitor slipped and fell on a wet floor in a "recently mopped triage room"), *McKelvy v. VRMC Medical Center of McKinney Subsidiary, L.P.*, No. 05-13-00990-CV, 2015 WL 169656, at *2 (Tex. App.—Dallas Jan. 14, 2015, no. pet. h.) (hospital employee slipped and fell due to a leaking piece of lab equipment), *Methodist Hospitals of Dallas v. Searcy*, No. 05-14-00375-CV, 2014 WL 5804193, at *1–2 (Tex. App.—Dallas Nov. 10, 2014, no pet.) (mem. op.) (visitor slipped and fell on a wet floor outside the labor and delivery area), *Gonzalez v. Diversicare Leasing Corp.*, No. 01-13-00108-CV, 2014 WL 4723404, at *1–2 (Tex. App.—Houston [1st Dist.] Sept. 23, 2014, pet. filed) (mem. op.) (nursing home employee stumbled over milk crates that a co-worker had stacked on a path used by employees to enter and exit the nursing home), *Reddy v. Veedell*, No. 01-14-00309, 2014 WL 4651211, at *1, *3–4 (Tex. App.—Houston [1st Dist.] Sept. 18, 2014, pet. filed) (non-patient was struck by a car driven by a distracted doctor), *Columbia Medical Center of Denton Subsidiary, L.P. v. Braudrick*, No. 02-13-00399-CV, 2014 WL 2144877, at *1–2 (Tex. App.—Fort Worth May 22, 2014, pet. filed) (mem. op.) (non-patient stepped in a hole while walking on a median at hospital's parking lot), and *Methodist Hospitals of Dallas v. Garcia*, No. 05-13-01307-CV, 2014 WL 2003121, at *2 (Tex. App.—Dallas May 14, 2014, no pet.) (mem. op.) (visitor was injured in a malfunctioning hospital elevator).

[5] Consistent with its expansive interpretation of *West Oaks* in *Ross*, the Fourteenth Court of Appeals also found claims to be HCLCs in *Brazos Presbyterian Homes, Inc. v. Lander*, No. 14-14-00478-CV, 2015 WL 574884, at *1, *3 (Tex. App.—Houston [14th Dist.] Feb. 10, 2015, no. pet. h.) ("invited guest" at defendant retirement community was injured by a parking valet employed by defendant's contractor), *Adams v. Golden Rule Service., Inc.*, No. 14-13-00421-CV, 2014 WL 1669868, at *1–2 (Tex. App.—Houston [14th Dist.] Apr. 24, 2014, no pet.) (mem. op.) (employee was injured "while attempting to assist a patient"), *Tillman v. Memorial Hermann Hospital System*, No. 14-13-00120-CV, 2014 WL 295166, at *1, *4 (Tex. App.—Houston [14th Dist.] Jan. 28, 2014, pet. filed) (visitor slipped and fell on water in a hospital hallway; court noted that "[t]hough the [*West Oaks*] court did not expressly state that a claim based upon alleged departures from accepted safety standards need not involve health care or be indirectly related to health care, in its guidance, the high court indicated that there were no such requirements"), *CHCA Bayshore, L.P. v. Salazar*, No. 14-12-00928-CV, 2013 WL 1907888, at *1, *5 (Tex. App.—Houston [14th Dist.] May 7, 2013, pet. denied) (mem. op.) (hospital employee was injured "while attempting to maneuver a patient" and alleged that the hospital was negligent in part because of its failure to provide proper training, equipment, and supervision for hospital personnel), *Tillman v. Memorial Hermann Hospital System*, No. 14-12-01169-CV, 2013 WL 5470064, at *1, *3 (Tex. App.—Houston [14th Dist.] Oct. 1, 2013, pet. denied)

In *Mejia*, we nevertheless held that the plaintiff's claim was not even "indirectly" related to health care and so an expert report was not required. *Mejia,* 2013 WL 4859592, at *3. We reached the same conclusion in *Rio Grande Regional Hospital v. Salinas*, No. 13-13-00557-CV, 2014 WL 3805141, at *1–5 (Tex. App.—Corpus Christi July 31, 2014, pet. filed) (mem. op.) (involving a slip-and-fall claim which was undisputedly "not even indirectly related to health care").

## B.    Analysis

VRMC argues on appeal that, under *West Oaks* and *Mejia*, Camacho's claim is an HCLC because it is a safety claim that is at least "indirectly related" to health care.[6] We agree. It was established through the affidavits of Loya and Camacho that the sliding doors which caused the injury were part of a system designed to prevent the abduction of newborn infants from the hospital's nursery. The doors' automatic closing function, which is the mechanism that injured Camacho and forms the gravamen of her claim, can be considered an "act" performed by a "health care provider"—i.e., the hospital—"for, to, or on behalf of a patient"—i.e., new mothers and/or their infant children—"during the patient's medical care, treatment, or confinement." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(10) (defining "health care" as "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on

---

(plaintiff radiology technician was injured while assisting a nurse in taking a portable chest x-ray of a patient), and *CHCA West Houston, L.P. v. Shelley*, No. 14-13-00499-CV, 2014 WL 3429478, at *1, *5 (Tex. App.—Houston [14th Dist.] July 15, 2014, pet. filed) (plaintiff hospital secretary slipped and fell while stepping onto a floor mat).

[6] VRMC did not argue in its motion to dismiss, and does not argue on appeal, that Camacho's claim alleges a "departure from accepted standards of medical care [or] health care"; instead, it argues only that Camacho's claim alleges a "departure from accepted standards of . . . safety." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(13) (West, Westlaw through 2013 3d C.S.). We therefore do not consider whether Camacho's claim alleges a "departure from accepted standards of medical care [or] health care." *Id.*

behalf of a patient during the patient's medical care, treatment, or confinement"); *see also id.* § 74.001(12)(A)(vii) (defining "health care provider" as including a "health care institution"); *id.* § 74.001(11)(G) (defining "health care institution" as including a hospital). Therefore, Camacho's claim complains about a safety function which is at least indirectly related to "health care" as defined in the statute. *See Mejia*, 2013 WL 4859592, at *2.

Camacho contends that we are bound under *Mejia* to conclude that her claims are "untethered" to health care and therefore not HCLCs. Mejia, like Camacho, was a hospital visitor and claimed that the hospital was negligent in failing to maintain the premises in a reasonably safe condition. *See id.* at *1. But *Mejia* is distinguishable because the safety claim at issue in that case did not relate, indirectly or directly, to any act defined as "health care." *See id.* Mejia alleged that the hospital was negligent in failing to ensure its floors were clean; however, there was no indication that the floors at issue were in a patient's room or that the cleaning of the floors at issue was related, directly or indirectly, to any act or treatment that should have been performed for, to, or on behalf of a patient during the patient's treatment. *See id.*; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(10). Here, on the other hand, Camacho's safety claim is at least indirectly related to the operation of the infant abduction prevention system, and that system falls under the statute's expansive definition of "health care." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(10). Camacho's claim is also distinguishable from the one at issue in *Vargas*, which also arose out of a malfunctioning automatic door in a hospital, because there was no allegation in *Vargas* that the door at issue in that case was related in any way to an act defined as health care. *See* 2014 WL 5794622, at *1.

11

Camacho further argues that it would be "futile" to require an expert report in this case because "it would be nearly impossible for [Camacho] to find a qualified expert under the TMLA to prepare an expert report that would be relevant to her premises liability claim." *See Twilley*, 422 S.W.3d at 789 (noting that requiring an expert report would be futile because "it would be terribly difficult, if not impossible, to find a qualified expert under the statute who was also competent to opine on the relevant standards of care"). She asserts that, considering the nature of her claim and the qualification requirements for experts under the statute, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 74.401(b)(2), she "would need to serve a report prepared by an expert who practices 'door medicine'—a health care expert who is also competent to opine about matters in the field of mechanical door operation and maintenance." She notes that, according to the phone book pages introduced as evidence at the dismissal hearing, "[n]o physician in the area meets those qualifications." Finally, Camacho argues that, "when construing a statute, . . . all parts of the statute must be given effect, and it must be read in the light of other statutes on the same subject," *Hunter v. Whiteaker & Washington*, 230 S.W. 1096, 1097 (Tex. Civ. App.—San Antonio 1921, writ ref'd), and that, when sections 74.351, 74.402, and 74.001(10) are read together, "it is clear that the expert report requirement applies only to claims related to diagnosis, care, or treatment of illnesses, injuries, or health conditions." *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.001(10) (defining "health care"), 74.351 (expert report requirement), 74.402 (qualification requirements for experts).

We are sympathetic to Camacho's concerns regarding the futility of requiring an expert report in this case and regarding the construction of the statutory scheme. In fact, in light of the requirements for experts set forth in the statute, we observe that it may well

12

be impossible for Camacho, due to the nature of her claim, to produce a fully compliant expert report. Section 74.351, which sets forth the expert report requirement, defines "expert" as

(A) *with respect to a person giving opinion testimony regarding whether a physician departed from accepted standards of medical care*, an expert qualified to testify under the requirements of Section 74.401;

(B) *with respect to a person giving opinion testimony regarding whether a health care provider departed from accepted standards of health care*, an expert qualified to testify under the requirements of Section 74.402;

(C) with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care in any health care liability claim, a physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence;

(D) with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care for a dentist, a dentist or physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence; or

(E) with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care for a podiatrist, a podiatrist or physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence.

*Id.* § 74.351(r)(5) (emphases added). None of the five definitions that appear in this statute apply to a person giving opinion testimony about whether a health care provider or physician "depart[ed] from accepted standards of . . . safety," and the list does not state that it is non-exclusive. Arguably, then, any person giving opinion testimony regarding whether a health care provider departed from safety standards cannot be an "expert" and thus would be incapable of providing a compliant report. *See id.*

13

Section 74.402 further states that, in an HCLC against a health care provider, an "expert" must "ha[ve] knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim" and must be "qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care." *Id.* § 74.402(b)(2), (3).[7]  Again, the statute explicitly contemplates only claims based on the "departure from accepted standards of . . . health care" and does not contemplate safety claims.  Moreover, section 74.402 explicitly contemplates only claims that "involve" the "diagnosis, care, or treatment" of an "illness, injury, or condition."  *See id.* § 74.402(b)(2).  Camacho's claim does not implicate the failure of VRMC to properly diagnose, care, or treat an illness, injury, or condition; and yet it falls within the unambiguously broad statutory definition of HCLC.[8]

---

[7] The expert qualification requirements in section 74.402 are not mandatory.  Although the statute states that a "person may qualify as an expert witness on the issue of whether the health care provider departed from accepted standards of care *only* if the person" meets the listed criteria, and that the trial court "shall apply the criteria," it also provides that a trial court may depart from the criteria "if, under the circumstances, the court determines that there is good reason to admit the expert's testimony."  *Id.* at § 74.402(b), (d) (emphasis added).  There is no such safety valve, however, contained in section 74.351. *See id.* § 74.351 (West, Westlaw through 2013 3d C.S.).  Under that section, an "expert report" must be written by an "expert" and an "expert" must qualify under one of the five definitions, and the trial court has no discretion to depart from those rules.  *See id.*

[8] Arguably, though Camacho does not accuse VRMC to failing to properly diagnose, care, or treat an illness, injury, or condition, her claim nevertheless "involves" the care of new mothers and infants.  *See id.* § 74.402(b)(2) (explicitly contemplating only claims that "involve" the "diagnosis, care, or treatment" of an "illness, injury, or condition").  If that were so, a health care provider that "has knowledge of accepted standards of care for health care providers" in caring for new mothers and infants would qualify as a standard-of-care expert under the TMLA.  *See id.* (stating that an "expert" must "ha[ve] knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim").  Still, the report authored by such an expert would also need to "provide a basis for the trial court to conclude that the plaintiff's claims have merit" in order to qualify as an expert report under the TMLA.  *Loaisiga v. Cerda*, 379 S.W.3d 248, 260 (Tex. 2012).  A person that qualifies as an expert due to their knowledge of the standards of care for new mothers and infants is unlikely to also have the expertise necessary to show "that the plaintiff's claims have merit" where, as here, the claims involve the technical operation of a piece of equipment that is unrelated to the practice of medicine.

Though we are troubled by this result, we are constrained by the plain language of the statute and by binding precedent. As noted, the TMLA contains an extremely broad definition of "health care" which unambiguously includes "*any* act" performed by a hospital "for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." *Id.* § 74.001(10) (emphasis added). The definition of HCLC is also extremely broad and is not limited, implicitly or explicitly, to those claims for which compliant expert reports may be feasibly obtained. *See id.* § 74.001(13). Further, the Texas Supreme Court has explicitly stated that a claim may be an HCLC even when no expert testimony is necessary to prove the merits of the claim at trial. *Tex. W. Oaks*, 371 S.W.3d at 182 (citing *Murphy*, 167 S.W.3d at 838). The high court has also clearly held that a claim for departures from accepted standards of safety may be an HCLC even if it is not directly related to health care. *Id.* Even if we were to find these tenets of law to be incorrectly reasoned, we would have no choice but to follow them. *See City of Mission v. Cantu*, 89 S.W.3d 795, 809 n.21 (Tex. App.—Corpus Christi 2002, no pet.) ("As an intermediate appellate court, we are bound to follow the expression of the law as stated by the Texas Supreme Court.").

Texas appellate justices have urged the supreme court and the Legislature to resolve the conflict among the courts of appeal regarding the construction of *West Oaks. See Watson v. Good Shepherd Med. Ctr.*, No. 06-14-00025-CV, 2015 WL 222331, at *6 (Tex. App.—Texarkana Jan. 15, 2015, no. pet. h.) (Moseley, J., concurring) ("I would call upon those who have more power than the intermediate appellate courts possess to somehow resolve this question in some way that is easily discernable. There is a need for a 'bright red line' for the public and the profession to employ."); *Reddy v. Veedell*, No.

01-14-00309-CV, 2014 WL 4651211, at *5 (Tex. App.—Houston [1st Dist.] Sept. 18, 2014, pet. filed) (Massengale, J., concurring).[9]  We join those justices in urging a resolution to the conflict; and we also respectfully urge the Legislature to amend the TMLA so that the statute no longer encompasses claims for which the acquisition of a compliant expert report is essentially impossible.[10]

## III. CONCLUSION

Camacho's claim alleges a departure from standards of safety that are at least indirectly related to health care because they concern the infant abduction prevention system, which is an "act" done "for, to, or on behalf of" patients during their treatment. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(10).  We therefore conclude, in accordance with binding precedent, that Camacho's claim is an HCLC under the statute as construed by the Texas Supreme Court in *West Oaks* and by this Court in *Mejia*. We sustain VRMC's issue.

---

[9] Justice Massengale of the First Court of Appeals stated as follows in his concurring opinion in *Reddy*:

> Even though the Legislature does not write statutes for the courts' approval, it still could clarify the TMLA in response to manifest interpretive difficulties.  Not only could this relieve the courts and litigants from the continuing burdens of litigation over the procedural standards, it could also better ensure that the standards applied are those actually approved by the Legislature, as opposed to a standard reflecting the courts' best good-faith effort to implement an opaque statute.  Legislatures have the right to expect courts to faithfully implement laws as enacted.  When the words fail, the Legislature has a corresponding responsibility to provide clarity where it is wanting.  Rather than leaving the difficult work of clarification to the courts, which have confessed their struggle with the task of reaching consensus about the meaning of the Act, the Legislature could—and, I respectfully suggest, should—study the historical record of how the [TMLA] is being applied in the courts, evaluate which outcomes do and do not reflect a desirable application of the statutory scheme, and then amend the statute to more clearly indicate what kinds of claims are intended to be subject to these special procedures.

2014 WL 4651211, at *5 (Massengale, J., concurring) (footnotes omitted).

[10] A bill recently filed in the Texas House of Representatives would accomplish this by amending chapter 74 to state that HCLCs must be based on an injury to a patient; that safety claims must be directly related to health care; and that premises liability claims are not HCLCs.  *See* Tex. H.B. 956, 84th Leg., R.S. (2015).

The trial court's judgment denying VRMC's motion to dismiss is reversed, and we remand for the award of attorney's fees and for further proceedings consistent with this opinion.  *See id.* § 74.351(b)(1).

DORI CONTRERAS GARZA,
Justice

Delivered and filed the
9th day of April, 2015.